*377
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 The common issues in these combined appeals center on whether public schools that have contracted for transportation services with independent bus companies should be liable for injuries to students which occur between a child’s home and the bus stop. In each case, we resolve these issues in favor of the school defendant, as did the Appellate Division.
 

 Chainani v Board of Educ.
 
 Eight-year-old Monica Chainani rode home from her New York City school on February 3,1987, and left the school bus at her designated stop, the last stop on the route. Monica had to cross the street to reach her house, which her regular bus driver knew. On that day, however, the bus was driven by defendant Edward Acuti, an employee of defendant Amboy Bus Company, who had driven that route only once previously. Acuti did not know that Monica had to cross the street and, after she stepped in front of the bus to cross, he pulled away from the curb and ran over her.
 

 Monica’s father, on her behalf and his own, brought suit against the Board of Education, Amboy and Acuti. A jury found both that Acuti was negligent and that his negligence was the proximate cause of the accident. The jury also found Monica negligent and apportioned responsibility 75% to Acuti and 25% to Monica. Additionally, the jury found that Acuti had violated Vehicle and Traffic Law § 1174 (b), but that the violation was not the proximate cause of the accident. The Trial Judge nonetheless directed a verdict for the plaintiffs against all three defendants. The Appellate Division affirmed as to Amboy and Acuti, but reversed as to the Board of Education, holding that the Board was not vicariously liable for Acuti’s violation of the statute. Plaintiffs appeal the reversal as to the Board; Amboy and Acuti appeal the affirmance as to them. We now affirm.
 

 Bruce v Hasbrouck.
 
 Nine-year-old Jennifer Bruce was seriously injured when she was struck by a car while trying to cross a highway to catch her bus at an undesignated stop. Jennifer’s designated stop — Tom’s Taxidermy — was on the same side of the highway as her home, the east side, and was unquestionably safe. The school bus was routed to travel north on the highway, Route 209, picking up students on the east side, and then turn around and travel south on Route 209 to pick up students on the west side. The Ellenville School District set up the loop route, with authorized stops on both sides, so that
 
 *378
 
 students would avoid having to cross Route 209. According to plaintiffs, however, when students on the east side were late they often crossed Route 209 to catch the bus at undesignated stops on the west side, a practice that had occurred as much as two or three times per week over a two-year period. The district denied knowledge of such a practice.
 

 On the morning of June 15, 1990, Jennifer missed the bus at her designated stop on the east side of Route 209 and crossed the highway to catch the bus on its return trip along the west side of the highway. The bus driver, defendant Lisa Mulford, an employee of defendant Shawanga Bus Company, was travel-ling south on the highway when she noticed that traffic was backed up due to an accident. A car driven by Roslyn Hasbrouck had struck Jennifer as she crossed the road.
 

 Jennifer’s parents, on her behalf and their own, brought suit against the Ellenville Central School District, Shawanga Bus Company, Mulford and Hasbrouck. The Trial Judge granted summary judgment to the school district, holding that it was not directly liable for the accident in that the child’s designated bus stop was safe, there was no evidence that the school district knew that children boarded the bus at undesignated stops on Route 209, and the district had no obligation to establish rules prohibiting students from crossing the highway. The Appellate Division affirmed as to the school district, holding that the district did not owe a duty to the child because she was not in its custody or control and that the district’s decision to impose "no-cross” rules was a governmental function immune from tort liability. Additionally, the court concluded that the district was not vicariously liable for the acts of the independent contractor Shawanga. As to Shawanga and Mulford, the Appellate Division reversed, holding that there was a question of fact regarding whether the act of picking up students who had crossed the highway was reasonable in light of the risk to the students. Plaintiffs appeal the order as to the school district, which we now affirm.
 

 Direct Liability of the Schools
 

 Advancing various theories of direct liability, plaintiffs argue first that the schools should be held responsible because the students were in their custody at the time of injury while on their way to and from the bus stop. Plainly, a school has a duty of care while children are in its physical custody or orbit of authority, or if a specific statutory duty has been imposed, and if the school chooses to provide transportation services it must do so in a careful and prudent manner including
 
 *379
 
 establishing safe bus stops
 
 (Pratt v Robinson, 39
 
 NY2d 554, 560;
 
 see also,
 
 Education Law § 3635 [1] [d] [relieving schools of responsibility of providing transportation to children directly to or from their homes]). Whatever the precise boundaries of the duty, however, here the schools had contracted-out responsibility for transportation, and therefore cannot be held liable on a theory that the children were in their physical custody at the time of injury.
 

 Alternatively plaintiffs argue that the Legislature has imposed a specific statutory duty on the schools by virtue of Vehicle and Traffic Law § 1174 (b), which reads:
 

 "The driver of such school bus, when receiving or discharging passengers who must cross a public highway, street or private road, shall instruct such passengers to cross in front of the bus and the driver thereof shall keep such school bus halted with red signal lights flashing until such passengers have reached the opposite side of such highway, street or private road.”
 
 [1]
 

 The words of the subdivision, however, clearly place the affirmative obligation on bus drivers, not schools. That no specific statutory duty was imposed on the schools is made evident by the web of detailed statutes and regulations concerning independent contractors engaged to provide student transportation services
 
 (see,
 
 Education Law § 305 [14]; § 3623 [1]; § 3627 [10]; § 3635; 8 NYCRR part 156). The statutes, for example, require contracts for transportation to be in writing and approved by each school superintendent, who is charged with conducting an investigation into the drivers, routes, time schedules and other matters involving student safety (Education Law § 3635 [3]; § 3625; 8 NYCRR 156.2,156.3). Transportation contracts must be awarded pursuant to competitive bidding and are subject to approval by the Commissioner of Education (Education Law § 305; 8 NYCRR 156.1). The Legislature obviously contemplated that schools would contract out transportation services yet nowhere specified the sort of direct responsibility it imposed on drivers under Vehicle and Traffic Law § 1174 (b)
 
 (compare,
 
 Labor Law §§ 240, 241 [placing
 
 *380
 
 liability for injury to workers upon owners who employ independent contractors]).
 

 The
 
 Bruce
 
 plaintiffs, as yet another basis for the school’s direct liability, suggest that the school was itself negligent in the operation of its transportation system when it set up a loop bus route and failed to establish "no-cross” rules, specifically instructing students not to cross the highway and bus drivers not to pick up students who had crossed the highway. Plaintiffs argue that, although it delegated the task of transporting students, the school retained control over safety issues and was thus responsible for promulgating no-cross rules (Restatement [Second] of Torts § 414 [one who employs an independent contractor but retains control over any part of the work remains liable for failing tp exercise its control with reasonable care]; Education Law § 3622;
 
 see also,
 
 8 NYCRR 156.2, 156.3 [d] [2]).
 

 Although the school was active in some areas involving safety — including conducting safety training sessions for bus drivers — it did not retain control over every safety aspect of the manner in which the independent contractor picked up and discharged students along Route 209. As both Supreme Court and Appellate Division noted, there was no evidence that the school had knowledge of a student practice of crossing Route 209 to catch the bus at undesignated stops on the opposite side. So far as this record is concerned, the school acted properly in instructing the bus company to pick up students at designated stops on both sides of Route 209 and was not further obligated to tell the bus company where it was not supposed to pick up students, relying reasonably on the company to act responsibly in protecting the safety of the children it was charged to transport and to comply with Vehicle and Traffic Law § 1174.
 

 Vicarious Liability of the Schools
 

 Having concluded that defendant schools are not themselves directly liable to plaintiffs, we turn to the question whether they are vicariously liable for the acts of the bus driver and company contracted to provide transportation services. Plaintiffs contend that the schools are vicariously liable based on the bus driver’s violation of Vehicle and Traffic Law § 1174 and because the task delegated was inherently dangerous. In both cases we decline plaintiffs’ invitation to extend liability to the schools.
 

 Ordinarily, a principal is not liable for the acts of independent contractors in that, unlike the master-servant rela
 
 *381
 
 tionship, principals cannot control the manner in which the independent contractors’ work is performed. Of numerous exceptions to this general rule, the one plaintiffs advance is the nondelegable duty — that the defendants were not free to delegate to a contractor the responsibility for transporting schoolchildren
 
 (Feliberty v Damon,
 
 72 NY2d 112, 118-119;
 
 see also,
 
 Prosser and Keeton, Torts § 71, at 512 [5th ed]). The "nondelegable duty” exception may be invoked where a particular responsibility is imposed upon a principal by statute or regulation
 
 (see, e.g., Kleeman v Rheingold,
 
 81 NY2d 270, 274-275) or where the task at issue is inherently dangerous
 
 (see, Rosenberg v Equitable Life Assur. Socy.,
 
 79 NY2d 663, 668).
 

 Plaintiffs point to Vehicle and Traffic Law § 1174 as imposing a statutory responsibility on the school. As previously discussed, this statute does not place any duty, let alone a nondelegable duty, on the schools.
 

 Nor can we agree with plaintiffs that vicarious liability should be imposed because the duty delegated is inherently dangerous
 
 (see, Feliberty v Damon,
 
 72 NY2d 112, 119,
 
 supra,).
 
 This State has long recognized an exception from the general rule where, genetically, the activity involved is "dangerous in spite of all reasonable care” (Prosser and Keeton, Torts § 71, at 513 [5th ed];
 
 see, Whitaker v Norman,
 
 75 NY2d 779; Restatement [Second] of Torts § 427). This exception applies when it appears both that "the work involves a risk of harm inherent in the nature of the work itself [and] that the employer recognizes, or should recognize, that risk in advance of the contract”
 
 (Rosenberg v Equitable Life Assur. Socy.,
 
 79 NY2d 663, 669,
 
 supra; McDonald v Shell Oil Co.,
 
 20 NY2d 160, 165). Familiar examples of inherently dangerous activities are blasting, certain types of construction and working with high tension electric wires (Prosser and Keeton, Torts § 71, at 513 [5th ed]).
 

 Demanding though it may be, the activity of transporting children by bus to and from school — successfully accomplished countless times daily — does not involve that sort of inherent risk for the nonnegligent driver and is simply not an inherently dangerous activity so as to trigger vicarious liability.
 

 Plaintiffs contend that a particularized version of this same exception applies where the employer knows or has special reason to know that the work for which the independent contractor was hired creates a "peculiar unreasonable risk” in the absence of special precautions and the employer takes no steps to minimize the risk (Restatement [Second] of Torts
 
 *382
 
 § 413;
 
 [2]
 

 see, Wilson v Good Humor Corp.,
 
 757 F2d 1293, 1303-1306 [DC Cir];
 
 see also,
 
 Prosser and Keeton, Torts § 71, at 512 [neither "inherently dangerous” nor "peculiar unreasonable risk” has been well defined and have been used by courts interchangeably]). The school’s failure to inform students that they were prohibited from crossing Route 209 and to instruct bus drivers not to pick up students who crossed the highway, according to plaintiffs, resulted in a "peculiar unreasonable risk” for which the school should be vicariously liable because it did not take adequate precautions. We have not previously adopted or rejected this Restatement exception and find it unnecessary to do so here.
 

 As
 
 Wilson
 
 illustrates, section 413 rests on both the principal’s knowledge of a peculiar unreasonable risk created by the work of the independent contractor and the principal’s failure to take any steps to minimize that risk, though in the best position to do so
 
 (see, Wilson v Good Humor Corp.,
 
 757 F2d, at 1305). Here, there was no evidence that the school knew of the students’ unsafe practice of crossing the highway to undesignated stops; the school took measures to minimize any risk by designating stops on both sides of the road; and the bus company, which did know of the students’ practice, was itself in a position to reduce the risk by refusing to receive passengers except at their designated stops.
 

 There is, in short, no basis for direct or vicarious liability of defendant schools.
 

 Liability of Amboy and Acuti under Vehicle and Traffic Law §1174
 

 Vehicle and Traffic Law § 1174 imposes on the bus driver,
 
 when receiving or discharging schoolchildren who must cross a road,
 
 a duty both to instruct such passengers to cross in front of the bus and to keep the bus halted, with red lights flashing, until the students have reached the other side. Failure to fulfill this duty, which proximately causes injury, results in the
 
 *383
 
 imposition of absolute liability on the driver
 
 (Van Gaasbeck v Webatuck Cent. School Dist.,
 
 21 NY2d 239). Defendants Amboy and Acuti urge that liability was erroneously assessed against them on two grounds, neither meritorious: that absolute liability can be imposed only when the proof shows the driver knew the schoolchild had to cross, and that the Appellate Division erred in affirming the trial court’s directed verdict on the issue of proximate cause.
 

 Defendants correctly point out that, unlike the present case, in
 
 Van Gaasbeck,
 
 as in
 
 Sewar v Gagliardi Bros. Serv.,
 
 (51 NY2d 752) — raising the same subdivision — the evidence established that the driver knew plaintiff students had to cross the roadway. We disagree with defendants, however, as to the legal significance to be drawn from that factual distinction. As the Court read the statute in
 
 Van Gaasbeck,
 
 and as we read the statute today, the "explicit purpose of this statute was to see to it that children would cross the highway under the careful supervision of the driver who would not only watch them cross the street in front of him but would flash his red lights to warn oncoming traffic to stop” (21 NY2d, at 245). Allowing the driver to avoid liability simply by failing to ascertain whether students must cross — in other words, allowing the new driver to escape responsibility because he failed to learn what the regular driver knew, for the children’s safety — is antithetical to the sense of the statute as well as the sense of
 
 Van Gaasbeck.
 
 Violation of the statute having been properly found, we agree with the trial court and Appellate Division that there was no reasonable view of the evidence that proximate cause was lacking
 
 (see, Cohen v Hallmark Cards,
 
 45 NY2d 493, 499).
 

 Appellants’ remaining arguments lack merit.
 

 Accordingly, in
 
 Chainani,
 
 the order of the Appellate Division should be affirmed, with costs to respondent Board of Education as against appellants-respondents and respondents-appellants. In
 
 Bruce,
 
 the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs.
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 In
 
 Chainani v Board of Educ.:
 
 Order affirmed, with costs to respondent Board of Education as against appellants-respondents and respondents-appellants.
 

 In
 
 Bruce v Hasbrouck:
 
 Order, insofar as appealed from, affirmed, with costs.
 

 [1]
 

 . At the time of Monica Chainani’s accident, Vehicle and Traffic Law § 1174 (b) expressly applied only to a highway and was amended in 1988 to clarify its application to public highways, streets and private roads. No issue is raised in this respect. Additionally, in 1990 the section was amended to require that the bus driver keep the bus halted until the passengers are at least 15 feet from the bus and off the road.
 

 [2]
 

 . Restatement (Second) of Torts § 413 reads in full:
 

 "One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
 

 "(a) fails to provide in the contract that the contractor shall take such precautions, or
 

 "(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.”