■ NATALIA ANIKUSHINA, Appellant, v COURTNEY D. MOODIE, Defendant, and CONSOLIDATED DELIVERY LOGISTICS, INC., et al., Respondents. [870 NYS2d 356]—

Order, Supreme Court, New York County (Deborah Kaplan, J.), entered August 7, 2007, which granted the corporate defendants' motion for summary judgment dismissing the complaint as against them, denied, as moot, their motion to strike plaintiff's notice to admit, and denied plaintiff's cross motion for leave to renew her motion to strike certain portions of defendants' answer to her second amended complaint, modified, on the law, to deny the motion for summary judgment and remand for determination of defendants' motion to strike, and otherwise affirmed, without costs.

The evidence presents a triable issue whether the corporate defendants exercised sufficient control over defendant Moodie's work to potentially render them liable for injuries plaintiff suffered when she was struck by a delivery van driven by Moodie (*see Carrion v Orbit Messenger*, 82 NY2d 742 [1993]). Moodie performed delivery services only for Olympic Courier Systems,

Inc., a subsidiary of CD&L Inc., during the years in which he worked for CD&L pursuant to an independent contractor's agreement with Olympic; he used CD&L forms; he made deliveries and pickups at times specified by CD&L; his whereabouts were tracked by CD&L by means of a prepared schedule and regular contact through a CD&L computer and CD&L dispatchers; he was paid 57% of the gross billing receipts for work performed; he was obligated to procure insurance in an amount dictated by the independent contractor's agreement; he always wore a shirt bearing defendants' logo (*see id.*; *Devlin v City of New York*, 254 AD2d 16 [1998]).

The court correctly denied plaintiff's cross motion to renew her motion to strike, since the evidence she submitted, even if new, was not addressed to the issues raised either in her original motion or in defendants' motion for summary judgment. Concur—Lippman, P.J., Acosta and Renwick, JJ.

Catterson, J., dissents in a memorandum as follows: Because I believe that the evidence in this case clearly demonstrates that the corporate defendants lacked the requisite degree of control necessary to an employer-employee relationship with the defendant driver and therefore, are not vicariously liable, I must respectfully dissent.

This action results from an automobile accident which occurred on August 1, 2003. The plaintiff alleges that a van driven by the defendant Courtney D. Moodie struck her as she was attempting to cross the street. At the time of the accident, Moodie was delivering packages for defendant Olympic Courier Systems, Inc., the subsidiary of defendant CD&L Inc. (CDL).

In October 2003, the plaintiff commenced a personal injury action against Moodie. Subsequently, the plaintiff added the corporate defendants as parties, alleging that they were vicariously liable for Moodie's negligence.[1] On or about January 29, 2007, the corporate defendants moved for summary judgment on the grounds that Moodie was not an employee of any of the corporate defendants, but rather, an independent contractor who provided delivery services to the defendants. Therefore, they could not be held vicariously liable for his negligence.

---

1. In late October 2003, the plaintiff served a first amended complaint to include Moodie's alleged employer, Consolidated Delivery Logistics, Inc., as a defendant. Consolidated later changed its name to CD&L Inc. The plaintiff, thereafter served a second amended complaint to include, as party defendants, the remaining named corporate defendants. She argued that the corporate veil should be pierced as to the wholly owned subsidiary and alter ego of CDL, defendant Olympic. The plaintiff also argued, inter alia, that the other defendants were shell corporations controlled by CDL, and that Moodie's work on behalf of CDL was controlled by these defendants as well.

In support of their motion, the corporate defendants relied on the "Independent Contractor Agreement" between Moodie and Olympic, as well as Moodie's payroll history and Form 1099s, and the EBT testimony of both Moodie and Curtis Hight, Olympic's Region Manager.[2] The agreement provided, inter alia, that Moodie was free to decide his own route for deliveries; could maintain a flexible work schedule for his business; was free to work for other companies; and could accept or reject the corporate defendants' regularly scheduled deliveries.

Moodie testified that he owned his own delivery van,[3] and paid for the vehicle's registration, insurance, gas and upkeep. He described his work for CDL as "flexible." His weekly pay from CDL was based on commission, and it was variable depending on the number of deliveries and time worked. Moodie was required to file a W-4 form with CDL's payroll department and he identified Form 1099s from Olympic for the years 2000 through 2003.

Hight testified that Moodie was not an employee of either Olympic or CDL, that he never received employee-related benefits, that he was not treated as an employee for tax purposes, that Moodie paid his own work costs, and that he performed delivery services pursuant to an independent contractor's agreement.

By order entered August 7, 2007, the court granted the corporate defendants' motion for summary judgment dismissing the action as against them upon finding that Moodie was an independent contractor rather than an employee.

On appeal, the plaintiff asserts that the motion court had no basis to rule that an independent contractor relationship existed between the corporate defendants and Moodie. She asserts that CDL controlled both the results of Moodie's work and the means used to achieve the results. Specifically, the plaintiff argues that CDL/Olympic dictated, assigned and coordinated deliveries through its computer program and dispatchers. The plaintiff also asserts that other evidence in the record demonstrates that CDL had control over Moodie, including, inter alia, that Moodie had to wear a CDL uniform, compile and timely submit completed delivery receipts, deliver packages by a certain time to recurrent customers, and leave undelivered packages at CDL warehouses. At the very least, the plaintiff argues there exists a

---

**2.** The Form 1099 is the Internal Revenue Service's tax form used for independent contractors to report income. Income reported on the Form 1099 does not have taxes taken out of it.

**3.** It is undisputed that the markings on the van contained Moodie's name and address.

material issue of fact as to the status of Moodie's work relationship with CDL/Olympic. For the reasons set forth below, I disagree.

As a general rule, a principal is not liable for the acts of an independent contractor because principals ordinarily do not control the manner in which independent contractors perform their work. (*Chainani v Board of Educ. of City of N.Y.*, 87 NY2d 370, 380-381 [1995].) Control of the method and means by which work is to be performed, therefore, is a critical factor in determining whether a party is an independent contractor or an employee for the purposes of tort liability. (*Harjes v Parisio*, 1 AD3d 680, 680-681 [2003], *lv denied* 1 NY3d 508 [2004].) While such a determination typically involves a question of fact, in those instances where the evidence on the issue of control presents no conflict, the matter may properly be determined by the court as a matter of law. (*Lazo v Mak's Trading Co.*, 199 AD2d 165, 166 [1st Dept 1993], *affd* 84 NY2d 896 [1994].) I believe that this presents just such a case.

Recently, the Court of Appeals has reaffirmed that "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer." (*Bynog v Cipriani Group*, 1 NY3d 193, 198 [2003].) The factors relevant to assessing control include whether the worker (1) works at his own convenience, (2) is free to engage in other employment, (3) receives fringe benefits, (4) is on the employer's payroll and (5) is on a fixed schedule. (*Id.* at 198.) Moreover, "incidental control over the results produced without further indicia of control over the means employed to achieve the results will not constitute substantial evidence of an employer-employee relationship." (*Matter of Ted Is Back Corp. [Roberts]*, 64 NY2d 725, 726 [1984].)

In the instant case, there is overwhelming evidence that Moodie was an independent contractor. The following facts are undisputed: Moodie owned his own vehicle; he paid all the costs associated with his vehicle; he was free to make his own hours; he could work for others; his contract was not exclusive to Olympic; he could accept or decline jobs as he decided; no taxes were withheld from his pay; no Social Security was withheld from his pay; he was not required to put a CDL mark on his vehicle; he could hire his own employees to assist him; he had to pay for the phone he used; he received no fringe benefits from the corporate defendant; and he was not provided workers' compensation by any of the corporate defendants. Furthermore, there is no evidence that Moodie was required to wear a shirt with the CDL logo. Indeed, it is undisputed that Moodie only

wore a CDL shirt because he received a bonus for wearing it. Moreover, Moodie testified that he wore the CDL-logo shirt to assist CDL's customers in identifying him so that he could gain quick access to delivery locations. He also testified that the route he took between his delivery location in New York City and his delivery location on Long Island was not dictated by Olympic, but rather, given the traffic conditions on Long Island, it was the only sensible route to take.

Contrary to the plaintiff's contention, the fact that Moodie called a company dispatcher, that he received text messages to obtain information as to pickups and deliveries, or that he was asked to make a delivery to Uniondale by a specific time are all insufficient to raise a triable issue of fact with respect to the employment status. (*See DeFeo v Frank Lambie, Inc.*, 146 AD2d 521 [1st Dept 1989] [where manufacturer was entitled to summary judgment since there was no evidence to support claim that delivery company was agent of manufacturer, rather than independent contractor, notwithstanding fact that district manager of manufacturer occasionally instructed delivery company as to whether shipped goods were to be delivered, and as to how they should be segregated according to type]; *see also Irrutia v Terrero*, 227 AD2d 380 [2d Dept 1996] [noting that while car service corporation did provide dispatches for the drivers who agreed to certain rules and standards, such rules merely related to incidental control and the exercise of general supervisory power].)

Equally without merit is the plaintiff's contention that *Bermudez v Ruiz* (185 AD2d 212 [1st Dept 1992]) requires reversal. In *Bermudez*, this Court found that the motion court erred in making a determination that, as a matter of law, an operator of a delivery truck was an independent contractor and not an agent of a furniture company. In reaching that conclusion, we relied upon the fact that there was no evidence of an independent contractor agreement between the driver and the company. In this case, however, it is undisputed that Moodie and the corporate defendants had just such an agreement. The plaintiff's position that a signed, authenticated agreement attested to by all the parties has no probative value, is simply untenable. (*See Gfeller v Russo*, 45 AD3d 1301 [4th Dept 2007] [the fact that a contract exists designating a person as an independent contractor is to be considered, but is not dispositive].)

It is also worth noting that the plaintiff's reliance on *Devlin v City of New York* (254 AD2d 16 [1st Dept 1998]), is misplaced. In *Devlin*, this Court determined that the record presented a question of fact about whether a car company controlled its

drivers so as to give rise to vicarious liability. In reaching this conclusion, we relied on the facts that the car company required drivers to drive certain cars, wear certain clothing, charge fares set by the company, pay membership dues, attend a three-day orientation course taught by the company, follow company bylaws and working rules, and display the company name and logo in their vehicle in an open and obvious manner. Here, the facts are very different. Even a cursory look at the record reveals that the only indicia of control exerted over Moodie by the corporate defendants were purely incidental. (*See e.g. Abouzeid v Grgas*, 295 AD2d 376 [2d Dept 2002] [where a limousine driver, who struck and injured a person, received radio dispatches from the company to pick up customers, was free to reject pickups, set his own hours, owned his own car, payed for gasoline and EZ passes, maintained insurance, was responsible for maintenance of his limousine, could hire drivers to work for him, and the company withheld no taxes for the driver, the court concluded that the control exercised by the company over the driver was only incidental, and was insufficient to give rise to an employment relationship].)

In my view, even under the most generous interpretation of the relationship between Moodie and the corporate defendants, it cannot be said that they had an employer-employee relationship. Therefore, I would affirm the order of the motion court in its entirety. [*See* 2007 NY Slip Op 32433(U).]