JUSTICE RICE,
dissenting.
¶44 The Court’s opinion today results from a fundamental misunderstanding or misapplication of the ‘inherently dangerous” activity exception. The opinion disturbs well-settled principles of tort law, has no foundational authority for its conclusions, and simply defies logic. Moreover, with regard to the State, the Court sees fit to redraft the plaintiffs complaint to address issues neither raised nor addressed in either the District Court or before this Court. Such disregard of the appellate rules should not be countenanced. I dissent, and would affirm the judgment entered by the District Court in favor of the County and the State.
¶45 I. Vicarious Liability of the County for ‘Inherently Dangerous”Activities
¶46 The Court declares that ‘the transportation of prisoners is ... an inherently dangerous activity.” Opinion, ¶ 22. The Court makes this pronouncement without citing any precedential authority. This is so because there is none. The Court’s decision not only disregards settled *479 principles of Montana law based upon the Restatement, but is in conflict with every other jurisdiction which has considered this issue. As a consequence, Montana now becomes the first and only state in the United States to impose vicarious liability for the activity of human transport. And, disconcertingly, the Court’s broad expansion of the exception is done without any clear test for determining whether an activity is inherently dangerous. This dissent will attempt to succinctly point out the Court’s analytical errors.
¶47 The “Inherently Dangerous”Activity Exception
¶48 It is well-established that employers are generally not liable for the torts of their independent contractors. Beckman v. Butte-Silver Bow Co., 2000 MT 112, ¶ 12, 299 Mont. 389, 1 P.3d 348 (citations omitted). However, employers may be liable for the intentional or negligent actions of an independent contractor if the activity is inherently or intrinsically dangerous. Beckman, ¶ 12. This is so because the employer is aware, at the time of contracting, of the dangers which are “inherent” in the work, and the law therefore requires him to oversee implementation of “special precautions” necessary to “protect workers from the unreasonable, extraordinary, and unusual risks associated with” an inherently dangerous activity. Beckman, ¶ 15-26; Restatement (Second) of Torts § 416 cmt. a (1965). Critically, the ‘inherently dangerous” exception applies only when the work itself is dangerous when skillfully performed. The Court’s decision to the contrary-that work can be considered “dangerous” by assuming it will be negligently performed-is contrary to the purpose of the exception and the reasons underlying the rule.
¶49 The ‘Inherently dangerous” exception (coined ‘intrinsically dangerous”) was first recognized in Montana in Shope v. City of Billings, 85 Mont. 302, 309, 278 P. 826, 828 (1929) (citing Dillon on Municipal Corporations vol. 4, §1722 (5th ed.); 43 C.J. 947). In Shope, the defendant, an independent contractor hired by the city to install a metal oil tank, negligently permitted a cable to sag across a street while he attempted to hoist and set the tank. The plaintiff, driving on the same street, struck the cable and was seriously injured. The Court, recognizing the ‘inherently dangerous” activity exception, stated that the “rule that the municipality is not liable for the negligence or wrongful acts of a contractor in the execution of the work agreed to be performed ‘does not apply where the contract directly requires the performance of a work intrinsically dangerous, however skillfully performed.’ ” Shope, 85 Mont. at 309, 278 P. at 828 (emphasis added, citations omitted). However, the case ultimately turned on a critical distinction. The Court found that the City of Billings was not *480 vicariously liable because the plaintiffs injury was entirely the result of the independent contractor’s negligent performance of the work. Shope, 85 Mont. at 309-10, 278 P. at 828.
¶50 This Court further explained that important distinction in the inherently dangerous context in Ulmen v. Schwieger, 92 Mont. 331, 345-48, 12 P.2d 856, 859-60 (1932), a highway construction personal injury case. In Ulmén, the plaintiff sustained serious injury when she drove into an open excavation and against a concrete culvert. Ulmen, 92 Mont. at 342-43, 12 P.2d at 857-58. The Ulmén Court held the employing party liable for failing to oversee that special precautions were in place, given the ‘inherently dangerous and hazardous” nature of the activity. The Court again recognized the “obvious difference” between this case and one where “committing work to a contractor to be executed, from which, if properly done, no injurious consequences can arise ....” Ulmen, 92 Mont. at 348, 12 P.2d at 860 (emphasis added) (citing Bower v. Peate, 1 Q.B. 321, 326 (1876)).
¶51 Thus, from the beginning of our jurisprudence, the critical component of the inherently dangerous exception has been clear: that a task can be deemed ‘inherently” or ‘intrinsically” dangerous where the danger cannot be alleviated by the skillful performance of the task. Negligent performance of a task does not turn it into an inherently dangerous task. See Chainani by Chainani v. Bd. of Educ. of City of N.Y., 663 N.E.2d 283, 287 (N.Y. 1995) (“the activity involved is ‘ dangerous in spite of all reasonable care’ ” (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts §71, at 513 (5th ed., West 1984)). Thus, the reliance by the Court and the Concurrence upon the sadistic misconduct of the van driver to find that transport activity is ‘inherently dangerous” is clearly flawed.
¶52 The exception has only been applied to “cases of demolition, excavation, and other clearly dangerous activities.” Arthur v. Holy Rosary Credit Union, 656 A.2d 830, 832 (N.H. 1995) (citing Carr v. Merrimack Farmers Exch., 146 A.2d 276, 279 (1958)); see W. Page Keeton et al., Prosser and Keeton on the Law of Torts §71, 512-16 (5th ed., West 1984) (identifying inherently dangerous activities as: excavation, construction, blasting, fireworks, crop dusting, the clearing of land by fire, tearing down high walls or chimneys, the construction of a dam) (collecting cases); Waite v. Am. Airlines, Inc., 73 F. Supp. 2d 349, 357 n. 8 (S.D.N.Y. 1999) (‘inherently dangerous activities typically include: blasting, pile driving, certain types of excavations, fumigation of buildings with dangerous gasses such as cyanide, the emission of noxious gasses into densely populated areas, and the collection of large quantities of explosives or inflammable liquids in a populous area”) *481 (citations omitted); Chainani, 663 N.E.2d at 287 (Tfjamiliar examples of inherently dangerous activities are blasting, certain types of construction and working with high tension electric wires”).
¶53 These cases of construction, demolition, excavation, noxious gasses, inflammable liquids and high tension electric wires logically define these rules because they are inherently dangerous even if skillfully performed, the employer knows of the dangers at the time of contracting, and special precautions are required to reduce those certain dangers. Courts, including this Court, have consistently applied the ‘inherently dangerous” activity exception to some form of construction, destruction or volatile instrumentality. Thus, in Beckman, the Court held that trenching was inherently dangerous as a matter of law, given that “requiring workers to enter a trench where they could be buried if a cave-in resulted, requires special precautions.” Beckman, ¶ 25; Fabich v. PPL Montana, LLC, 2007 MT 258, ¶ 36, 339 Mont. 289, 170 P.3d 943.
¶54 Further, we have been careful to point out that §416 and 427 of the Restatement (Second) of Torts are exceptions to “the general rule that employers are not liable for the torts of their independent contractors,”and as such should be applied “narrowly.” Beckman, ¶ 25. Consequently, in both Cunnington and Fabich we held that scaffolding work was not inherently dangerous, reiterating the Beckman rule that ‘Ta]n inherently dangerous activity is one, like large-scale trenching, that requires ‘special precautions’ to prevent injury or death.” Cunnington v. Gaub, 2007 MT 12, ¶ 16, 335 Mont. 296, 153 P.3d 1; see Fabich, ¶ 36.
¶55 Applying these principles, courts have refused to expand this narrow exception to a broader range of activities, including the transport of humans. The New York Court of Appeals declined to extend the exception to “the activity of transporting children by bus to and from school.” Chainani, 663 N.E.2d at 287-88. The Chainani Court discussed the “inherently dangerous”jurisprudence and its application to such dangerous activities of “blasting, certain types of construction and working with high tension electric wires.” Chainani, 663 N.E.2d at 287 (citations omitted). In rejecting the argument that the transportation of school children was inherently dangerous, the court reasoned that, “[djemanding though it may be, the activity of transporting children by bus to and from school-successfully accomplished countless times daily-does not involve that sort of inherent risk for the nonnegligent driver and is simply not an inherently dangerous activity so as to trigger vicarious liability.” Chainani, 663 N.E.2d at 287. The New York Court’s refusal to extend *482 the exception to an activity whose dangerousness is dependent upon the vagaries of human behavior should give the Court concern about its ruling here.
¶56 The Requirement of Advance Notice of the Danger
¶57 In addition to being inherently dangerous, the exception requires the employer to be aware of the inherent dangers at the time of contracting. The crux of the Restatement (Second) of Torts, §416 and 427, is ‘that the risk or danger must be ‘recognizable in advance,’ i.e., at the time the contract is made, for the doctrine to be invoked.” Bosak v. Hutchinson, 375 N.W.2d 333, 340 (Mich. 1985) (citations omitted). ‘Stated another way, the inherently dangerous exception cannot be applied unless a risk inherent in the nature of the procedures is apparent or contemplated by the employer.” Rosenberg v. Eq. Life Assurance Socy. of U.S., 595 N.E.2d 840, 844 (1992); see also McDonald v. Shell Oil Co., 228 N.E.2d 899, 901-02 (N.Y. 1967); McCall v. Ala. Bruno’s, Inc., 647 So.2d 175, 177-79, and n. 12 (Fla. 1994) (It is sufficient that work of any kind involves a risk, recognizable in advance, of physical harm to others which is inherent in the work itself ....”) (emphasis added, collecting cases); Arthur, 656 A.2d at 832 (‘The inherent danger doctrine applies only where the alleged danger is ‘naturally to be apprehended’ by the defendant at the time it engages the independent contractor to perform the work.”) (citations omitted).
¶58 Our cases have likewise recognized this concept. We said in Ulmén that ‘the work was in fact inherently dangerous and hazardous to the public, and known to be so by the contracting parties, unless properly guarded.” Ulmen, 92 Mont. at 347, 12 P.2d at 859 (emphasis added, citations omitted). Advance notice, of course, satisfies the concept of foreseeability for purposes of imposing liability on the employer, and demonstrates why an employer cannot be held liable for an independent contractor’s collateral negligence in the performance of his duties, even if the activity is inherently dangerous-precisely because the employer cannot foresee such collateral negligence, and cannot be held liable for it. This principle undergirds the illustration we provided in Beckman of which liabilities arising from an inherently dangerous activity could be vicariously imposed upon the employer:
If a contractor is employed to transport giant logs over the highway, the contractor’s employer is not liable for torts caused by the contractor driving in excess of the speed limit. Speeding is not an unreasonable risk particular to transporting logs, but is an ordinary form of negligence which is usual in the community and the prevention of which requires ordinary or standard precautions. However, an employer will be vicariously liable for the contractor’s *483 failure to take special precautions to anchor the logs to the contractor’s truck. This is because transporting giant logs creates an uncommon hazard that the logs will become disengaged, a hazard not ordinarily encountered in the community which calls for particular precautions to prevent its occurrence.
Beckman, ¶ 22 (citing the Restatement (Second) of Torts §416 cmt. d (1965)). The employer is not liable for the negligence or recklessness of the independent contractor, i.e., speeding or failing to inspect the brakes, because he was not aware of those dangers at the time he contracted the work away. Beckman, ¶¶ 22-26. Employers cannot be expected to know the unforeseeable negligent, reckless, wanton or intentional tortious conduct of independent contractors at the time of contracting. Rather, the employer is liable only for those torts which arise from the “peculiar” or “unreasonable risks” which are “caused by” the dangerous activity, because he was aware of them when he contracted away the work. Beckman, ¶ 22; see Shope, 85 Mont. at 309-10, 278 P. at 828; Ulmen, 92 Mont. at 346-48, 12 P.2d at 859-60. Here, the Court requires an employer to assume that an employee of its independent contractor will engage in misconduct and to take special precautions to prevent that possibility.
¶59 Application of the Law to Pauli’s Case
¶60 The Court today obliterates 80 years of our caselaw applying the exception, beginning with Shope through Beckman and recently in Fabich, and rejects over 100 years of national jurisprudence, Bower, 1 Q.B. 321 (1876), including the rules of the Restatement and the decisions of many courts who have considered this issue. Under these authorities, the Court’s conclusion that the risk of driver misconduct is an inherent danger arising from the enterprise of prisoner transportation for which the employer should have known and taken precautions is simply untenable.
¶61 First, prisoner transportation does not involve construction, destruction or some form of inherent volatile or dangerous instrumentality, like dynamite or trenching. It involves control over human beings. It is axiomatic that the nature of dynamite is to blow up, and that special precautions are necessary to evacuate people, protect workers, etc. The nature of trenching is for the ground to collapse after giant holes have been dug in the earth, and special precautions, like “sloping the banks of a trench, mechanically shoring a trench bank, or using a trench box” are necessary. Beckman, ¶ 23. The Court believes that the nature of a prisoner is that he will be ‘inore likely to become aggressive and hostile and more likely to attempt escape or engage in other dangerous activities.” Opinion, ¶ 25. However, dynamite is not *484 “more likely” to blow up; it just does. The point is that human beings do not have an absolute nature that an employer can predict, unlike dynamite. An employer should not be required to assume either that a prisoner will act out or that the contractor’s employee will engage in sadistic horseplay.
¶62 Here, the County could not have possibly foreseen the driver’s alleged misconduct toward the prisoners when it contracted with AEI. The Court faults the County for knowing what it could not have possibly known-that AEI would employ a driver who would engage in misconduct, or, in the words of the Concurrence, was “burdened with personality traits or mental deficits that predispose [him] to cruelty and torture.” Concurrence ¶ 1. There were no “special precautions” the County could have taken to prevent what occurred in this case, except hiring a different contractor who did not employ sadistic drivers-and this point underscores the error of the Court’s Opinion and the Concurrence.
¶63 Pauli could well have asserted other claims to properly hold the County responsible. Pauli could have asserted that the County negligently hired AEI as an independent contractor. See Gurnsey v. Conklin Co., Inc., 230 Mont. 42, 751 P.2d 151 (1988); Restatement (Second) of Torts § 411 (1986). Indeed, this is the actual basis for liability advocated by the Concurrence, that the County “fail[ed] its duty of due diligence to investigate the contractor before hiring ... to make sure that the contractor is insured, operates in compliance with applicable federal and state laws and rules, has a good service record, and utilizes employees who are competent, trained and professional.” Concurrence, ¶ 1. The Concurrence thus makes out a negligent hiring claim on behalf of Paull-but not a claim for vicarious liability.
¶64 Plaintiff s complaint alleged that the rollover accident at issue here occurred because ‘the driver, Steven Mendoza, was laughing as he repeatedly turned the steering wheel quickly to the left and to the right thereby causing the urine to spill out of the cups and all over the prisoners [and] then failed to maintain his lane of travel, and drifted into the median then overcorrected ....’’There is nothing in the record to suggest that an inherent risk of prisoner transport-i.e., attempted escape, assault by a prisoner on the driver or another prisoner, or prisoner activity of any sort-caused or contributed to this unfortunate accident. Under questioning during oral argument, Plaintiffs counsel admitted the obvious-that the driver’s actions here did not constitute a risk which is inherent in the transportation of prisoners. However, the Court closes its eyes to the obvious in order to reach the result it desires.
*485 ¶65 The Court has greatly expanded vicarious liability, on no authority and little to no guidance for future cases. In holding that prisoner transportation is inherently dangerous, arguably any activity can now be inherently dangerous, as long as some dangerous possibilities can be conjured up and “special precautions” imagined. This holding will expose contracting employers to liability for virtually every negligent or intentional tort committed by the independent contractor. The exception-ence promised to be “narrow”-has now swallowed the rule. Justice Gray’s special concurrence in Beckman, warning that we not “allow the exceptions to swallow the general rule,” has now been realized. Beckman, ¶ 46 (Gray, J., concurring). I would affirm the judgment for the County.[1]
¶66 II. The Ostensible Agency Claim Against the State
¶67 I would also affirm summary judgment in favor of the State. The Court states that Tt]he District Court considered but rejected Pauli’s argument that the State had a duty to transport him safely and humanely.” Opinion, ¶ 33. Not true. Pauli not only failed to argue to the District Court, in either written or oral arguments, that the State had a non-delegable duty, he, more importantly, did not allege it in his complaint. His complaint did not mention either “duty”or “contract,’’let alone state a claim that the State had entered an independent contractor relationship with AEI creating contractual duties of the State which should be declared non-delegable. The Court offers that the issue was referenced in a discovery disclosure, but a discovery answer cannot preserve a claim or theory not pled or otherwise presented to the district court.
¶68 ‘The general rule in Montana is that this Court will not address either an issue raised for the first time on appeal or a party’s change in legal theory.” Unified Indus., Inc. v. Easley, 1998 MT 145, ¶ 15, 289 *486 Mont. 255, 961 P.2d 100 (citing Day v. Payne, 280 Mont. 273, 276, 929 P.2d 864, 866 (1996)); see Akhtar v. Van de Wetering, 197 Mont. 205, 209, 642 P.2d 149, 152 (1982) (‘Ta]n issue which is presented for the first time to the Supreme Court is untimely and cannot be considered on appeal”). This rule “applies to both substantive and procedural matters, as well as to a change in a party’s theory of the case.” Day, 280 Mont. at 276, 929 P.2d at 866. The Court in Day explained the principle:
[I]t is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider. Furthermore, it is unfair to allow a party to choose to remain silent in the trial court in the face of error, taking a chance on a favorable outcome, and subsequently assert error on appeal if the outcome in the trial court is unfavorable.
Day, 280 Mont. at 277, 929 P.2d at 866 (citing 5 Am. Jur. 2d Appellate Review §690 (1995)).
¶69 The Montana cases regarding preservation of an issue for appellate review are legion. See Spencer v. Robertson, 151 Mont. 507, 445 P.2d 48 (1968) (Supreme Court will consider for review only those questions raised in trial court); In re T.E., 2002 MT 195, ¶ 20, 311 Mont. 148, 54 P.3d 38 (the Court has consistently held that it will not consider issues raised for the first time on appeal) (collecting cases); Anderson v. Monforton, 2005 MT 310, ¶ 30, 329 Mont. 460, 125 P.3d 614 (‘Since this argument is raised for the first time on appeal, we do not address it.” (citing State v. Weaselboy, 1999 MT 274, ¶ 16, 296 Mont. 503, 989 P.2d 836)).
¶70 Pauli’s failure to assert a claim that the State had a non-delegable duty arising out of an independent contractor relationship with AEI deprived the State of its ability to respond, deprived the District Court of its ability to consider the issue, and accordingly failed to preserve such a claim for appeal. Apparently, the appellate rules are of no consequence to the Court.
¶71 The Court has essentially rewritten the Plaintiffs complaint to set forth a claim against the State which the Plaintiff did not make for himself, a violation of long-held tenets of appellate review. “[I]t is not this Court’s obligation to conduct legal research on appellant’s behalf, to guess as to his precise position, or to develop legal analysis that may lend support to his position.” Pankratz Farms, Inc. v. Pankratz, 2004 MT 180, ¶ 82, 322 Mont. 133, 95 P.3d 671 (quoting In re Estate of Bayers, 1999 MT 154, ¶ 19, 295 Mont. 89, 983 P.2d 339). By so doing, *487 the Court violates its duty to be neutral and impartial to all parties who appear before the Court.[2]
¶72 The Plaintiffs claim against the State, to the extent the complaint’s intentions could be discerned at all,[3] was premised upon a vague agency theory, as set forth in a single sentence: ‘the defendant Park County, Montana was acting as the agent for and on behalf of and at the request of the State of Montana.” Even accepting arguendo that this sufficiently pled a claim based upon agency, the Plaintiff nonetheless decided, on appeal, to make a non-delegable duty argument instead, and failed to argue his agency theory in his briefing to this Court. “A party may not raise new arguments or change its legal theory on appeal because it is fundamentally unfair to fault the trial court for failing to rule on an issue it was never given the opportunity to consider.” State v. Morrison, 2008 MT 16, ¶ 10, 341 Mont. 147, 176 P.3d 1027 (citations omitted). The Plaintiff ultimately preserved no claim whatsoever against the State in this case. However, this is of no import to the Court, which doesn’t even mention these issues, despite the explanation of them given by the State’s counsel during oral argument. The message given here is that rules of appellate review do not apply if the Court feels strongly enough about reaching an issue. If necessary, the Court will even rewrite the plaintiffs complaint to do so.
¶73 Because I believe the Court’s decision to reach these issues is error, I will not analyze at length the substance of the Court’s holding that AEI was an ostensible agent of the State as to Pauli. I only note that the Court’s ruling in this regard is made as a matter of law, without regard to the factual issues that we have held must be resolved in order to establish ostensible agency. ‘TO]ur ostensible agency statute focus[es] on the action or inaction of the putative principal which caused the third person to believe an employment relationship existed, and the reasonableness of the third person’s corresponding belief.” Butler v. Domin, 2000 MT 312, ¶ 39, 302 Mont. 452, 15 P.3d 1189.
¶74 I would affirm the District Court’s judgment in favor of both the County and the State. I dissent.
JUSTICE LEAPHART, concurring in part and dissenting in part.
*488 ¶75 I concur with the Court’s resolution of issue two. As to issue one, I concur with the Court’s conclusion that the transportation of prisoners is an inherently dangerous activity. Opinion, ¶ 22. To the extent that Justice Rice concludes that driver misconduct is not, however, one of the dangers ‘inherent” in the transportation of prisoners, I agree with his dissent.

 Clear guidance for the dissent’s position is provided by the Restatement (Second) of Torts, §§416 and 427, used interchangeably, which stand for the proposition that “the employer remains liable for injuries resulting from dangers which he should contemplate at the time that he enters into the contract, and cannot shift to the contractor the responsibility for such dangers, or for taking precautions against them.” Restatement (Second) of Torts §416 cmt. a. The Restatement comments further explain that §416 is more commonly applied “where the employer should anticipate the need for some specific precaution, such as a railing around an excavation in a sidewalk,” while “§427 is more commonly applied where the danger involved in the work calls for a number of precautions, or involves a number of possible hazards, as in the case of blasting, or painting carried on upon a scaffold above the highway.” Section 427 makes clear that the employer who employs an independent contractor to complete work involving an inherent danger to others “which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract,” shall be liable for the harm caused by the independent contractor. Restatement (Second) of Torts §427.

 On. appeal, the Plaintiff offers for the first time a non-delegable duty argument against the State, premised upon a “special relationship” theory.

 Defense counsel argued to the District Court that “we were trying to figure out [] what theory the complaint made against the State of Montana .... It was a puzzle to look at that complaint and try to find a connection between the allegations of the complaint and the conduct of the State of Montana ....”Hrg. Transcr. 22:24-23:3 (Nov. 5, 2007).