[898 NE2d 539, 869 NYS2d 356]

PAUL BROTHERS, Appellant, v NEW YORK STATE ELECTRIC AND GAS CORPORATION, Respondent, et al., Defendants.

Argued September 4, 2008; decided October 21, 2008

## POINTS OF COUNSEL

*Powers & Santola, LLP,* Albany (*Michael J. Hutter* and *Daniel R. Santola* of counsel), for appellant. I. New York State Electric and Gas Corporation (NYSEG) can be held vicariously liable for any negligence by Tamarack Forestry Service, Inc. that caused plaintiff's injuries, even if Tamarack is an independent contractor, if, as plaintiff contends, NYSEG assumed a contractual duty to comply with the pertinent federal and state work site safety regulations for the benefit of plaintiff by reason of the highway work permit issued to it, which required compliance with those regulations. (*Rosenberg v Equitable Life Assur. Socy. of U.S.,* 79 NY2d 663; *Gravelle v Norman,* 75 NY2d 779; *Feliberty v Damon,* 72 NY2d 112; *Kleeman v Rheingold,* 81 NY2d 270; *Joyce v Manhattan Coll.,* 1 AD3d 202; *Backiel v Citibank,* 299 AD2d 504; *Flaherty v Fox House Condominium,* 299 AD2d 448; *Davidson v Madison Corp.,* 257 NY 120; *May v 11½ E. 49th St. Co., Inc.,* 269 App Div 180, 296 NY 599; *Contemporary Mission, Inc. v Famous Music Corp.,* 557 F2d 918.) II. New York State Electric and Gas Corporation contractually assumed a duty to plaintiff

to comply with the pertinent federal and state worker safety regulations specified in the highway work permit applied for and issued to it by the State Department of Transportation. (*White v Westage Dev. Group,* 191 AD2d 687, 74 NY2d 609; *Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507; *Wolf v City of New York,* 39 NY2d 568; *Cassell v Babcock & Wilcox Co.,* 186 AD2d 1000; *Kaplan v Dart Towing,* 159 AD2d 610; *Florence v Goldberg,* 44 NY2d 189; *City of New York v Kalikow Realty Co.,* 71 NY2d 957; *Burke v City of New York,* 2 NY2d 90; *People v Wong,* 182 AD2d 98; *Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.,* 93 NY2d 584, 1042.) III. New York State Electric and Gas Corporation's (NYSEG) nondelegable duty that it owed plaintiff was breached as a matter of law by Tamarack Forestry Service, Inc. as the proof of its failure to comply with 29 CFR 1910.269 (p) (1) (ii) and 12 NYCRR 23-9.7 (d) is undisputed and NYSEG introduced no proof that such failures were in the circumstances excusable or otherwise reasonable. (*Wolf v City of New York,* 39 NY2d 568; *Rizzuto v L.A. Wenger Contr. Co.,* 91 NY2d 343; *Copp v City of Elmira,* 31 AD3d 899; *Rodriguez v City of New York,* 232 AD2d 621; *Sacchetti v Vasile Constr. Corp.,* 254 AD2d 777.)

*Rivkin Radler LLP,* Uniondale (*Evan H. Krinick* and *Harris J. Zakarin* of counsel), and *Pennock, Breedlove & Noll* for respondent. I. New York State Electric and Gas Corporation (NYSEG) is not responsible for the negligent acts of Tamarack Forestry Service, Inc., its independent contractor, and did not assume any specific nondelegable contractual duty for which vicarious liability would attach. Therefore, the complaint against NYSEG was properly dismissed. (*Feliberty v Damon,* 72 NY2d 112; *Mondello v New York Blood Ctr.—Greater N.Y. Blood Program,* 80 NY2d 219; *Kleeman v Rheingold,* 81 NY2d 270; *Chainani v Board of Educ. of City of N.Y.,* 87 NY2d 370; *Rosenberg v Equitable Life Assur. Socy. of U.S.,* 79 NY2d 663; *Whitaker v Norman,* 75 NY2d 779; *De Angelis v Lutheran Med. Ctr.,* 58 NY2d 1053; *Comes v New York State Elec. & Gas Corp.,* 82 NY2d 876; *Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494; *Lombardi v Stout,* 80 NY2d 290.) II. Plaintiff's employer, not New York State Electric and Gas Corporation, was responsible to comply with safety regulations. In any event, the regulations cited by plaintiff were not breached. (*Fitzgerald v New York City School Constr. Auth.,* 18 AD3d 807, 8 NY3d 801; *Scott v American Museum of Natural History,* 3 AD3d 442; *Pelleschi v City of Rochester,* 198 AD2d 762; *Khan v Bangla Motor & Body Shop, Inc.,* 27 AD3d 526.)

*Hiscock & Barclay, LLP,* Buffalo (*Darryl J. Colosi* of counsel), for Niagara Mohawk Power Corporation, amicus curiae. The memorandum and order appealed from should be affirmed to avoid substantial negative impacts to the gas and electric utility industry and its customers throughout the state. (*First Fin. Ins. Co. v Jetco Contr. Corp.,* 1 NY3d 64; *Matter of Fosmire v Nicoleau,* 75 NY2d 218; *Abraham v New York Tel. Co.,* 85 Misc 2d 677; *Porr v NYNEX Corp.,* 230 AD2d 564; *Lauer v New York Tel. Co.,* 231 AD2d 126; *Lee v Consolidated Edison Co. of N.Y.,* 98 Misc 2d 304; *Western Union Telegraph Co. v Esteve Brothers & Co.,* 256 US 566.)

## OPINION OF THE COURT

READ, J.

In October 1999, defendant New York State Electric and Gas Corporation (NYSEG) applied to the New York State Department of Transportation (DOT) for a form highway work permit authorizing it to undertake "Electric and Gas Maintenance Work in Highway Region #8 (Columbia, Dutchess, Orange, Putnam, Westchester, Rockland, and Ulster Counties)" between January 1 and December 31, 2000. NYSEG and other utilities providing electric and gas service to customers in upstate New York ask DOT each year for these generic work permits, which allow them to construct, maintain and repair electric and gas network and support facilities in state highway rights-of-way. The permits are transferable and assignable with DOT's consent, and utilities routinely farm out their highway-related projects to independent contractors.

DOT granted NYSEG the permit, which set forth a detailed outline entitled "METHOD OF PERFORMING WORK WITHIN THE STATE HIGHWAY RIGHT OF WAY." Under the heading "GENERAL CONDITIONS" and the subheading "REQUIREMENTS," the permit stated that

> "[a]ll the current requirements of the following shall apply: Occupational Safety and Health Administration, Federal Department of Labor, Safety and Health Standards (29 CFR 1926/1910); Part 131, Title 17, New York Code of Rules and Regulations, Accommodation of Utilities Within State Right-of-Way; New York State Department of Labor, Industrial Code Rule 23, Protection of Persons Employed in Construction and Demolition Work; Industrial Code Rule 53, Construction, Excavation and Demo-

lition Operations At or Near Underground Facilities."

Two of the enumerated regulatory regimes are pertinent to this appeal: the federal Occupational Safety and Health Administration (OSHA) program and State Industrial Code (12 NYCRR) part 23. Specifically, OSHA regulations prescribe that

> "[n]o vehicular equipment having an obstructed view to the rear may be operated on off-highway jobsites where any employee is exposed to the hazards created by the moving vehicle, unless:
>
> "(A) The vehicle has a reverse signal alarm audible above the surrounding noise level, or
>
> "(B) The vehicle is backed up only when a designated employee signals that it is safe to do so" (29 CFR 1910.269 [p] [1] [ii]).

Relatedly, part 23 specifies that "[t]rucks shall not be backed or dumped in places where persons are working nor backed into hazardous locations unless guided by a person so stationed that he sees the truck drivers and the spaces in back of the vehicles" (12 NYCRR 23-9.7 [d]).

Later in 1999, following a bidding process, NYSEG contracted with Tamarack Forestry Service, Inc. to clear trees and shrubbery in NYSEG's "Brewster Division," which includes parts of Westchester, Putnam and Dutchess Counties. The contract required Tamarack to take safety precautions "[f]or the protection of workers and the public." Tamarack employed about a dozen workers on this project, including plaintiff Paul Brothers.

On the morning of August 29, 2000, Tamarack's crew blocked off a portion of the eastbound lane of a two-lane state highway in the Town of Kent, Putnam County, with traffic cones. This created a work zone for trimming brush and trees encroaching upon the telephone poles lining that stretch of road. Flagpersons directed traffic around the work zone, where several Tamarack trucks were parked and a wood chipper had been set up. The cleared vegetation was to be fed into the chipper, which would then "shoot" fragmented debris directly into the bed of a waiting truck for disposal off-site.

Plaintiff, a member of the ground crew, was cutting trees and limbs in the work zone with a chainsaw. Around 9:00 A.M., his chainsaw came apart, and so he walked toward one of the parked trucks to retrieve tools to fix it. Meanwhile, a foreman had

directed one of plaintiff's coworkers to back up a bucket truck and position it behind the chipper, which was located at the opposite end of the work zone.

The coworker's view out the bucket truck's rear window was completely obstructed by a dump box mounted on the chassis. The truck was not equipped with a backup alarm, nor did a spotter or flagperson assist the coworker. As he began to back up to get around the parked trucks blocking his access to the chipper, the coworker saw plaintiff walking in the work zone. While maneuvering the truck, however, he lost sight of plaintiff, struck him from behind and ran over him. Plaintiff sustained severe injuries, including an above-the-knee amputation of one leg.

The Town of Kent Police Department cited the coworker for violating Vehicle and Traffic Law § 1211, "Limitations on backing." OSHA also investigated the accident and imposed a $3,500 penalty on Tamarack for violating 29 CFR 1910.269 (p) (1) (ii).

In April 2001, plaintiff commenced an action against NYSEG for negligence and violation of Labor Law § 241, seeking to recover damages for his injuries. In August 2003, he also sued Verizon Communications, Inc., NYNEX, Inc., Verizon of New York, Inc. and Bell Atlantic Mobile, Inc., and Aerial Lift Repair, Inc., the latter for failure to install a backup alarm on the truck involved in the accident. These three actions were eventually consolidated. Plaintiff subsequently discontinued his claims against the telephone companies and withdrew his statutory claim against NYSEG. In addition, Aerial Lift successfully moved for summary judgment dismissing plaintiff's complaint against it.

On March 21, 2006, NYSEG moved for summary judgment dismissing the complaint, while plaintiff moved the next day for partial summary judgment against NYSEG on the issue of liability. In support of his motion, plaintiff contended that NYSEG was vicariously liable for the negligence of both his employer, Tamarack, and his coworker.

Supreme Court denied NYSEG's motion for summary judgment and granted plaintiff's motion for partial summary judgment to the extent of ruling that NYSEG breached a nondelegable duty owed him.[1] The court determined that the DOT highway work permit imposed a nondelegable duty on NYSEG

---

1. In tort law, the term "nondelegable duty," although widely used, is somewhat misleading. The question is not so much whether a defendant can

to comply with federal and state safety regulations, and that this duty was "breached as concerns OSHA regulation 29 CFR 1910.269 (P) (1) (ii) and Industrial Code 12 NYCRR 23-9.7 (d)," but that NYSEG had adduced sufficient evidence to raise a question of fact as to proximate cause for the jury to decide.

On NYSEG's appeal, the Appellate Division reversed on the law, denied plaintiff's motion for partial summary judgment, granted NYSEG's motion for summary judgment and dismissed the complaint. In the Appellate Division, plaintiff advanced the argument that NYSEG was liable for Tamarack's negligence because the work permit was "a contract pursuant to which [NYSEG] voluntarily assumed a nondelegable duty to comply with various federal and state worker safety regulations" (*Brothers v New York State Elec. & Gas Corp.*, 43 AD3d 1309, 1310 [4th Dept 2007]). The Appellate Division disagreed, concluding that the work permit in this case was merely a license, not a contract, and that NYSEG "did not assume any duty running to plaintiff under the work permit" (*id.*). We subsequently granted plaintiff's motion for leave to appeal (9 NY3d 818 [2008]), and now affirm.

The issue in this case is whether plaintiff may hold NYSEG vicariously liable for Tamarack's alleged negligence. Typically, "liability in negligence is . . . premised on a defendant's own fault, not the wrongdoing of another person" (*Feliberty v Damon*, 72 NY2d 112, 117 [1988]). Under the doctrine of vicarious liability, however, liability for another person's wrongdoing is imputed to the defendant (*id.* at 117-118). This doctrine

> "rests in part on the theory that—because of an opportunity for control of the wrongdoer, or simply as a matter of public policy loss distribution—certain relationships may give rise to a duty of care, the breach of which can indeed be viewed as the defendant's own fault" (*id.* at 118).

Generally, "a party who retains an independent contractor, as distinguished from a mere employee or servant, is not liable for the independent contractor's negligent acts" (*Kleeman v Rheingold*, 81 NY2d 270, 273 [1993]). The primary justification for this rule is that "one who employs an independent contractor has no right to control the manner in which the work is to be

or has delegated to another party a duty owed by that defendant to a particular plaintiff, but whether the defendant owes the plaintiff a duty in the first place.

done and, thus, the risk of loss is more sensibly placed on the contractor" (*id.* at 274). This general rule, however, is subject to various exceptions, and "it has been observed that the general rule 'is now primarily important as a preamble to the catalog of its exceptions' " (*id.*, quoting *Pacific Fire Ins. Co. v Kenny Boiler & Mfg. Co.*, 201 Minn 500, 503, 277 NW 226, 228 [1937]).

The exceptions have been articulated in various ways. The Restatement groups them into three broad categories:

> "1. Negligence of the employer in selecting, instructing, or supervising the contractor.

> "2. Non-delegable duties of the employer, arising out of some relation toward the public or the particular plaintiff [and]

> "3. Work which is specially, peculiarly, or 'inherently' dangerous" (Restatement [Second] of Torts § 409, Comment *b*; *see also Kleeman*, 81 NY2d at 274 [citing the Restatement]; *Chainani v Board of Educ. of City of N.Y.*, 87 NY2d 370, 381 [1995] [nondelegable duty exception "may be invoked where a particular responsibility is imposed upon a principal by statute or regulation . . . or where the task at issue is inherently dangerous" (citation omitted)]).

In *Rosenberg v Equitable Life Assur. Socy. of U.S.* (79 NY2d 663, 668 [1992]), we enumerated the exceptions somewhat differently, encompassing those circumstances

> "where the employer (1) is under a statutory duty to perform or control the work, (2) has assumed a specific duty by contract, (3) is under a duty to keep premises safe, or (4) has assigned work to an independent contractor which the employer knows or has reason to know involves special dangers inherent in the work or dangers which should have been anticipated by the employer."

In later cases involving vicarious liability for the negligence of an independent contractor, however, we have spoken more generally about nondelegable duties, explaining that "no clearly defined criteria" exist (*Kleeman*, 81 NY2d at 275). Rather, "a *sui generis* inquiry" must be conducted because "the conclusion ultimately rests on policy considerations" (*id.*). As we explained in *Feliberty*,

> "[a] nondelegable duty has been described as one

that the employer is not free to delegate to a contractor and 'requires the person upon whom it is imposed to answer for it that care is exercised by anyone, even though he be an independent contractor, to whom the performance of the duty is entrusted' (Restatement [(Second) of Torts], Introductory Note [to sections 416-429], at 394). In large part, whether a duty—or, perhaps more accurately, whether liability—is 'nondelegable' turns on policy considerations. A duty is nondelegable when 'the responsibility is so important to the community that the employer should not be permitted to transfer it to another.' (Prosser and Keeton, Torts § 71, at 512 [5th ed].)" (72 NY2d at 118-119.)

Here, plaintiff asserts that NYSEG is vicariously liable for Tamarack's negligence because, in the work permit, NYSEG "assumed a specific duty by contract" to comply with federal and state worker safety regulations. Plaintiff essentially takes the position that a contractual obligation necessarily constitutes a nondelegable duty in tort. We do not agree. In *Feliberty*, for example, the plaintiff physician sued his malpractice insurer, alleging that the insurer was vicariously liable for the alleged negligence of the independent counsel it retained to defend the plaintiff. Although the insurer's duty to defend was undoubtedly contractual, we ultimately refused to impose vicarious liability. We relied on several policy considerations: namely, the duty to defend an insured is by its very nature delegable, because the Judiciary Law prohibits an insurance company from practicing law; the insurer is precluded from interfering with retained counsel's independent professional judgments; and the insured could obtain relief in a direct action against independent counsel. Moreover, "a contractual obligation, standing alone, will . . . not give rise to tort liability in favor of a third party" absent certain exceptions not applicable here (*Espinal v Melville Snow Contrs.*, 98 NY2d 136, 138 [2002]; *see also Church v Callanan Indus.*, 99 NY2d 104, 111-112 [2002]).

Further, the work permit at issue in this case is not a typical "bargained-for exchange." Although the State charges a fee for the permit, this is nominal consideration at best. In addition, the permitee's "breach" of the permit's conditions does not give rise to the usual contract remedies—in fact, DOT may revoke the permit at any time (*see* 17 NYCRR

131.21 [c]). But whether or not the permit constitutes a contract is ultimately beside the point, and not something that we need to decide: regardless, the permit imposes certain obligations on the permitee. Its terms and conditions are not meaningless or optional; the permitee agrees to abide by them in order to obtain DOT's permission to work in the highway right-of-way. Thus, the key issue is whether NYSEG has undertaken a nondelegable duty to comply with the safety regulations enumerated in the permit for plaintiff's benefit. And to quote *Kleeman* again, "whether a particular duty is properly categorized as 'nondelegable' necessarily entails a *sui generis* inquiry," where "the conclusion ultimately rests on policy considerations" (81 NY2d at 275).

Here, as the Appellate Division noted, several policy considerations militate against imposing vicarious liability on NYSEG for Tamarack's negligence. First, expanding vicarious liability to cover these work permits would make NYSEG potentially liable to a large class of plaintiffs, thus extending its duty beyond any reasonable limit. As in this case, utilities annually obtain highway work permits covering extensive geographical areas and, for practical reasons, routinely hire independent contractors to carry out the numerous construction/maintenance tasks thereby authorized. Of course, an injured employee's recovery from one of these independent contractors is limited by workers' compensation, but this is not sufficient justification to impose vicarious liability on a utility that does not supervise or control the injury-causing work. Moreover, the Highway Law requires utilities to obtain permits, and they do not have the ability to bargain for terms and conditions.[2] Thus, although plaintiff presses the point that NYSEG should be held liable because it voluntarily assumed a duty to comply with the safety regulations recited in the permit, NYSEG does not really have a choice in the matter; it cannot shirk maintenance work in state highway rights-of-way.

---

**2.** Highway Law § 52 requires a person or entity to obtain "a work permit issued by the commissioner of transportation" before commencing work within a state highway right-of-way. DOT regulations specify the types of permits and agreements that may be issued to utilities (*see* 17 NYCRR 131.16). The permit obtained by NYSEG in this case was an "annual work permit," which is "available on a region-wide basis for the maintenance of a utility's facilities" and authorizes the utility to perform "pruning of trees, emergency repairs, routine maintenance and service connections" (17 NYCRR 131.16 [f]).

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Order affirmed, with costs.