| |
|:---:|
| **Lopez v Uber Tech., Inc.** |
| 2025 NY Slip Op 30798(U) |
| March 11, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 158514/2021 |
| Judge: James G. Clynes |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| PRESENT: | **HON. JAMES G. CLYNES** | PART | **22** |
|---|---|---|---|
| | *Justice* | | |

-------------------------------------------------------------------X

WANDA LOPEZ,

                              Plaintiff,

                   - v -

UBER TECHNOLOGIES, INC., JEM LEASING, LLC, and
NELI M. ARROYO DURAN DE CACERES,

                              Defendants.

-----------------------------------------------------------------X

| INDEX NO. | 158514/2021 |
|---|---|
| MOTION DATE | 08/28/2024 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 67, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85

were read on this motion to/for                JUDGMENT - SUMMARY        .

In this negligence action arising out of a motor vehicle accident, defendant Uber Technologies, Inc. (Uber) moves, pursuant to CPLR 3212, for summary judgment dismissing the complaint and all cross-claims against them on the ground that it cannot be held vicariously liable for the alleged negligence of defendant Neli M. Arroyo Duran De Caceres (Arroyo).

## Background

Plaintiff Wanda Lopez commenced this action to recover damages for personal injuries allegedly sustained on January 9, 2020, when the motor vehicle operated by Arroyo, in which plaintiff was a passenger, was involved in a rear-end collision with another vehicle on the George Washington Bridge in New York County (NY St Cts Elec Filing [NYSCEF] Doc No. 39, Carr affirmation, exhibit J, ¶¶ 7-8 and 23-24; NYSCEF Doc No. 73, Mendez affirmation, exhibit A, plaintiff tr at 74). Plaintiff alleges that Uber or defendant Jem Leasing LLC (Jem Leasing) owned Arroyo's vehicle and that Arroyo was acting within the scope of her employment with Uber or Jem Leasing when the accident occurred (NYSCEF Doc No. 39, ¶¶ 5-6, 10-14, 17-18, and 20-22).

In its answer to the complaint, Uber repeatedly denied that there was an employment relationship between it and any other party in the action, asserted that Arroyo "was an independent driver and not an agent or employee of [Uber]," and that "[Uber] did not own, possess, or control any of the motor vehicles involved in the subject accident" (NYSCEF Doc No. 41, Carr

**158514/2021 LOPEZ, WANDA vs. UBER TECHNOLOGIES, INC. ET AL**
Motion No. 001

**Page 1 of 9**

[* 1]

affirmation, exhibit L at 8-10). Uber alleged in its seventeenth affirmative defense that the action was "barred, in whole or in part, under the independent contractor defense, as Neli M. Arroyo Duran De Caceres was an independent contractor responsible for [her] own means and methods, making the doctrine of respondeat superior and agency inapplicable," and Uber alleged in its eighteenth affirmative defense that it did not own, operate or control the motor vehicle (*id.* at 14) (emphasis in original). Jem Leasing and Arroyo interposed a cross-claim for contribution and/or indemnification against Uber in its answer to the complaint (*id.* at 4).

Uber now moves for summary judgment on the ground that Arroyo was an independent contractor, and as such, Uber cannot be held vicariously liable for Arroyo's alleged negligence. Uber also argues that it did not own the Arroyo vehicle. Uber submits deposition transcripts for Arroyo and Erin O'Keefe (O'Keefe), an affidavit from O'Keefe, and other exhibits in support.

O'Keefe, a Senior Manager in Corporate Business Operations for Uber, avers that she oversees a certain amount of Uber's operations in New York, including those of its wholly owned subsidiary, Uber USA, LLC (Uber USA) (NYSCEF Doc No. 33, Carr affirmation, exhibit D, O'Keefe aff, ¶¶ 1, 3 and 7-8). O'Keefe describes Uber as a company that uses "proprietary technology to develop and maintain digital multi-sided marketplace platforms," such as its "Rides" platform (*id.*, ¶ 4). Uber provides two versions of its Uber mobile application – a rider version (the Rider App) and a driver version (the Driver App) (*id.*, ¶ 5). When a rider using the Rider App requests a ride, the software routes that request to a nearby driver logged into the Driver App, and at that point, the driver may accept or reject the request (*id.*, ¶ 6).

In New York City, Uber USA sublicenses the Driver App to independent third-party transportation providers licensed by the New York City Taxi & Limousine Commission (TLC) (*id.*, ¶ 8). Prospective drivers signing up for the Driver App must furnish Uber with the documentation required by TLC and provide other documents online before they may access the Driver App (*id.*, ¶ 9). Prospective drivers must also consent to entering into a Technology Service Agreement (TSA) with Uber USA, after which an electronic receipt bearing a time and date stamp is generated (*id.*, ¶¶ 10-11).

O'Keefe avers that on or about September 6, 2019, Arroyo electronically accepted and agreed to the TSA with Uber USA (*id.*, ¶ 12; NYSCEF Doc No. 36, Carr affirmation, exhibit G). Section 13.1 of the TSA reads as follows:

**158514/2021 LOPEZ, WANDA vs. UBER TECHNOLOGIES, INC. ET AL**
**Motion No. 001**

**Page 2 of 9**

2 of 9

[* 2]

"13.1. Except as otherwise expressly provided herein with respect to Uber acting as the limited payment collection agent solely for the purpose of collecting payment from Users on behalf of Customer, the relationship between the parties under this Agreement is solely that of independent contracting parties. The parties expressly agree that: (a) this Agreement is not an employment agreement, nor does it create an employment relationship, between Uber and Customer or Uber and any Driver; and (b) no joint venture, partnership, or agency relationship exists between Uber and Customer or Uber and any Driver" (NYSCEF Doc No. 38, Carr affirmation, exhibit I at 15) (bold emphasis removed).

Section 2.4 also reads, in pertinent part, that "Uber does not, and shall not be deemed to, direct or control Customer or its Drivers generally or in their performance under this Agreement specifically, including in connection with … the provision of Transportation Services, the acts or omissions of Drivers, or the operation and maintenance of any vehicles" (*id.* at 4).

O'Keefe avers that Uber and Uber USA did not control the details of Arroyo's work, as Arroyo was free to determine when, where and how long she wished to use the Driver App; could accept, decline and cancel trip requests in her discretion; was not required to wear a uniform; was not provided with a vehicle or any equipment; did not report to anyone at Uber or attend meetings; and could use another software application, like Lyft or Doordash (*id.*, ¶ 15). Furthermore, neither Uber nor Uber USA paid Arroyo a salary or withheld any taxes from Arroyo, with Uber USA issuing a 1099 tax form to Arroyo (*id.*, ¶ 16).

Arroyo testified at her deposition that she began driving for Uber in 2017 (NYSCEF Doc No. 37, Carr affirmation, exhibit H, Arroyo tr at 15-16 and 39). Arroyo stated that she never interviewed with Uber before she began (*id.* at 24). Uber did not provide Arroyo with any training on how drive a motor vehicle or operate a business (*id.* at 39) nor did Uber furnish her with any equipment (*id.* at 30). Arroyo testified that she never had a boss or supervisor at Uber and never attended any meetings there (*id.* at 32). Uber did not require her to wear a uniform (*id.*). Arroyo testified that she set her own hours; could log into the Uber app whenever she chose; could accept and reject trip requests; and could take days off from driving without having to inform anyone at Uber (*id.* at 25-26 and 29). Uber did not place any geographic restrictions on where Arroyo could drive, and she could use any navigation system she chose (*id.* at 28). Uber also did not restrict Arroyo from working for one of its competitors (*id.* at 33). Arroyo added that Uber did not pay her any healthcare or retirement benefits and did not withhold any taxes (*id.* at 37). Arroyo leased the vehicle involved in the accident from Jem Leasing beginning in 2018, though she now owns

158514/2021  LOPEZ, WANDA vs. UBER TECHNOLOGIES, INC. ET AL
Motion No. 001

Page 3 of 9

3 of 9

the vehicle (*id.* at 19 and 29-30). Arroyo expressed that she was solely responsible for maintaining the vehicle (*id.* at 20) and paid for gas and oil changes (*id.* at 30). Arroyo testified that she was transporting an Uber passenger when the accident occurred (*id.* at 42).

Plaintiff, in response to the motion, contends that Uber exercises non-incidental control over drivers sufficient to establish an employer/employee relationship.

### Discussion

A party moving for summary judgment bears the burden of "mak[ing] a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). The "facts must be viewed in the light most favorable to the non-moving party" (*Bazdaric v Almah Partners LLC*, 41 NY3d 310, 316 [2024] [internal quotation marks and citation omitted]). If the moving party meets its prima facie burden, "the party opposing the motion must demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action or tender an acceptable excuse for [its] failure so to do" (*Zuckerman v City of New York*, 49 NY2d 557, 560 [1980]).

"The doctrine of respondeat superior renders an employer vicariously liable for torts committed by an employee acting within the scope of the employment" (*Judith M. v Sisters of Charity Hosp.*, 93 NY2d 932, 933 [1999]). "Pursuant to this doctrine, the employer may be liable when the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment" (*id.*, citing *Riviello v Waldron*, 47 NY2d 297, 304 [1979]; *see also Brothers v New York State Elec. & Gas Corp.*, 11 NY3d 251, 257 [2008], quoting *Feliberty v Damon*, 72 NY2d 112, 117-118 [1988] ["[t]ypically, 'liability in negligence is … premised on a defendant's own fault, not the wrongdoing of another person' … [but] '[u]nder the doctrine of vicarious liability, … liability for another person's wrongdoing is imputed to the defendant'"]).

By contrast, a party who hires an independent contractor is generally not liable for that contractor's negligent acts (*Kleeman v Rheingold*, 81 NY2d 270, 273 [1993]). "The primary justification for this rule is that one who employs an independent contractor has no right to control the manner in which the work is to be done and, thus, the risk of loss is more sensibly placed on the contractor" (*Brothers*, 11 NY3d at 257-258 [internal quotation marks and citation omitted]).

**158514/2021 LOPEZ, WANDA vs. UBER TECHNOLOGIES, INC. ET AL**
Motion No. 001

**Page 4 of 9**

[* 4]                                        4 of 9

The Court of Appeals has explained:

"The distinction between an employee and an independent contractor has been said to be the difference between one who undertakes to achieve an agreed result and to accept the directions of his employer as to the manner in which the result shall be accomplished, and one who agrees to achieve a certain result but is not subject to the orders of the employer as to the means which are used" (*Matter of Morton*, 284 NY 167, 172 [1940], *mot to amend remittitur denied* 284 NY 738 [1940]).

Thus, key to the existence of an employer/employee relationship, as opposed to an independent contractor relationship, is "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results" (*Bynog v Cipriani Group*, 1 NY3d 193, 198 [2003], *rearg denied* 2 NY3d 794 [2004]; *Quik Park W. 57 LLC v Bridgewater Operating Corp.*, 148 AD3d 444, 445 [1st Dept 2017] ["control of the method and means by which work is to be performed is a critical factor in determining whether one is an independent contractor or an employee"]). "Factors relevant to assessing control include whether the worker (1) worked at [the worker's] own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule" (*Bynog*, 1 NY3d at 198). "'Minimal or incidental control over a person's work product without direct supervision or input over the means used to complete the work is insufficient to establish a traditional employment relationship'" (*Meehan v County of Suffolk*, 144 AD3d 640, 641 [2d Dept 2016], quoting *Parisi v Loewen Dev. Corp.*, 5 AD3d 646, 647 [2d Dept 2004]). Additionally, "the mere retention of general supervisory powers over an independent contractor cannot form a basis for the imposition of liability against the principal" (*Goodwin v Comcast Corp.*, 42 AD3d 322, 323 [1st Dept 2007]). Whether a worker is an independent contractor or an employee is usually a question for the jury, but the issue may be decided as a matter of law "where the evidence on the issue of control presents no conflict" (*id.* 322-323).

Applying these principles, Uber has demonstrated its prima facie entitlement to summary judgment. First, the TSA labels each driver as an independent contractor. Though the TSA is not dispositive on the issue (*see Brielmeier v Leal*, 226 AD3d 955, 957 [2d Dept 2024]), the other evidence submitted on the motion demonstrates that Arroyo exercised significant autonomy over her work. Arroyo worked at her own convenience, was free to engage in other employment, and did not receive any fringe benefits, like health insurance or vacation pay from Uber. Uber issued a 1099 tax form to Arroyo and did not withhold any taxes. Uber did not instruct Arroyo to wear a

158514/2021  LOPEZ, WANDA vs. UBER TECHNOLOGIES, INC. ET AL
Motion No. 001

Page 5 of 9

uniform, and Arroyo chose when, where and how long she wished to work. Arroyo leased her own vehicle and paid all gas and maintenance costs. Arroyo also chose which navigation system she wished to use. This evidence establishes that Arroyo was an independent contractor when the accident occurred (*see Sebrow v Joe & Mike Taxi, Inc.*, 157 AD3d 590, 591 [1st Dept 2018] [driver "who received no salary, retained his own fares, and had the sole responsibility and control over the manner and means of providing taxi services" was an independent contractor]; *Alves v Petik*, 136 AD3d 426, 426 [1st Dept 2016] [driver worked at his own convenience and on his own schedule, was free to work for competitors, did not receive a fixed salary or benefits, and paid all costs associated with the vehicle he owned]; *Sanabria v Aguero-Borges*, 117 AD3d 1024, 1025-1026 [2d Dept 2014] [driver was free to work for others, did not receive fringe benefits, had no taxes withheld, and received a 1099 form]; *Chaouni v Ali*, 105 AD3d 424, 424-425 [1st Dept 2013] [driver owned and maintained his own vehicle, paid for his own automobile insurance, set his own work schedule, did not have taxes withheld from his paycheck, received a 1099 form, could accept or reject any dispatch, took breaks when he chose, and could work for other dispatch companies]).

Plaintiff fails to raise a triable issue of fact in opposition. To begin, plaintiff's reliance on *Matter of Hossain (Goundanywhere LLC-Commissioner of Labor)* (205 AD3d 1282, 1282 [3d Dept 2022]) and *Matter of Lowy (Uber Tech., Inc.-Commissioner of Labor)* (189 AD3d 1863, 1863 [3d Dept 2020], *lv dismissed* 37 NY3d 1045 [2021]) and for the proposition that an employment relationship exists between Uber and drivers is misplaced. Those matters concerned whether an employment relationship between a claimant seeking unemployment insurance benefits and the entity for whom the claimant worked existed. In any event, apart from certain exceptions not relevant here, a decision rendered in connection with a disputed claim for unemployment insurance benefits is not entitled to preclusive effect in a subsequent action or proceeding (*see* Labor Law 623 [2]; *Uy v Hussein*, 186 AD3d 1567, 1569 [2d Dept 2020]). *Yan v Hungrypanda US Inc.* (2024 NY Slip Op 33739[U], *1-2 [Sup Ct, NY County 2024]) is similarly inapplicable, as that action concerned a claim for unpaid wages and whether the plaintiff was an "employee" for purposes of liability under Labor Law article 6.

As for the Assurance of Discontinuance between Uber and the Office of the Attorney General of the State of New York dated November 1, 2023, that investigation concerned whether Uber's practice may have violated Executive Law 63 (12), which pertains to whether the Attorney General may seek a court order enjoining a person from engaging in fraudulent or illegal acts, and

**158514/2021  LOPEZ, WANDA vs. UBER TECHNOLOGIES, INC. ET AL**
Motion No. 001

Page 6 of 9

6 of 9

provisions of Labor Law article 6 and the Administrative Code of the City of New York on wage deductions, notice and earning statements, and paid sick leave (NYSCEF Doc No. 74, Mendez affirmation, exhibit B). The Attorney General did not find, and Uber did not concede or admit, that drivers utilizing the Driver App were Uber employees (*id.*)

Plaintiff next argues Uber exerts significant control over the results of each driver's work based on several provisions in the TSA. Plaintiff points to sections 2.6.1, 2.6.2, 2.8, 3.1 and 3.2., 3.3, 4.3. and 12.2. These provisions, though, "merely set[ ] forth guidelines that are not indicative of the control needed to establish an employer-employee relationship" (*Armacida v D.G. Neary Realty Ltd.*, 65 AD3d 984, 984 [1st Dept 2009]). For instance, section 3.2 discusses vehicle requirements, and states that each vehicle must be:

> "(a) properly registered and licensed to operate as a passenger transportation vehicle in the Territory; (b) owned or leased by Customer, or otherwise in Customer's lawful possession; (c) suitable for performing the passenger transportation services contemplated by this Agreement; and (d) maintained in good operating condition, consistent with industry safety and maintenance standards for a Vehicle of its kind and any additional standards or requirements in the applicable Territory, and in a clean and sanitary condition" (NYSCEF Doc No. 38 at 8).

Sections 3.1 and 3.3 discuss driver requirements and documentation to be provided to Uber (*id.*). These requirements appear to comport with TLC regulations concerning drivers (NYSCEF Doc No. 35 at 24-26). To the extent plaintiff contends Uber requires each driver to maintain a clean and sanitary vehicle, control over a vehicle's cleanliness is insufficient (*see Raja v Big Geyser, Inc.*, 144 AD3d 1123, 1124 [2d Dept 2016]).

Sections 2.6.1 and 2.6.2 discuss ratings and comments or feedback given by users to drivers, and states that a driver's average rating reflects rider satisfaction, not the driver's compliance with Uber's policies or recommendations (NYSCEF Doc No. 38 at 6). Section 2.8 provides that a driver's geo-location must been shared with Uber, which "will be displayed to the User before and during the provision of Transportation Services to such User" (*id.* at 7). Section 4.3 concerns are adjustments (*id.* at 8-9). Section 12.2 governs termination of the TSA, and states, in part, that Uber may terminate the TSA "in the event Customer and/or any Driver, as applicable, no longer qualifies, under applicable law or the standards and policies of Uber" (*id.* at 14). None of these requirements bear on the actual "manner in which the result shall be accomplished" (*Matter of Morton*, 28 NY 167, 172 [1940]).

**158514/2021  LOPEZ, WANDA vs. UBER TECHNOLOGIES, INC. ET AL**     **Page 7 of 9**
**Motion No. 001**

7 of 9

Finally, in *Kleeman*, the Court of Appeals articulated three exceptions to the general rule against vicarious liability for an independent contractor's negligence: "negligence of the employer in selecting, instructing or supervising the contractor; employment for work that is especially or 'inherently' dangerous; and, finally, instances in which the employer is under a specific nondelegable duty" (81 NY2d at 274). Plaintiff has not raised whether any of these exceptions apply.

Accordingly, it is

ORDERED that the motion of defendant Uber Technologies, Inc. for summary judgment dismissing the complaint and the cross-claims against it is granted, and the complaint is dismissed against said defendant; and it is further

ORDERED that the cross-claims against defendant Uber Technologies, Inc. by defendants Jem Leasing, LLC and Neli M. Arroyo De Caceres are dismissed; and it is further

ORDERED that the said claims and cross-claims against defendant Uber Technologies, Inc. are severed and the balance of the action shall continue; and it is further

ORDERED that the Clerk of the Court shall enter judgment in favor of defendant Uber Technologies, Inc. dismissing the claims and cross-claims made against it in this action; and it is further

ORDERED that the caption be amended to reflect the dismissal and that all future papers filed with the court bear the amended caption; and it is further

ORDERED that the amended caption is as follows:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:
------------------------------------------------------------------------X
WANDA LOPEZ,                                                    Index No. 158514/2021

                                        Plaintiff,

                    - against -

JEM LEASING, LLC and NELI M. ARROYO DURAN DE
CACERES,

                                        Defendants.
------------------------------------------------------------------------X
and it is further

158514/2021   LOPEZ, WANDA vs. UBER TECHNOLOGIES, INC. ET AL
Motion No. 001

Page 8 of 9

8 of 9

ORDERED that counsel for the moving party shall serve a copy of this order with notice of entry upon the Clerk of the Court (60 Centre Street, Room 141B) and the Clerk of the General Clerk's Office (60 Centre Street, Room 119), who are directed to mark the court's records to reflect the change in the caption herein; and it is further

ORDERED that such service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh).

This constitutes the Decision and Order of the Court.

<u>3/11/2025</u>
DATE

JAMES G. CLYNES, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | X | GRANTED | ☐ DENIED | | GRANTED IN PART | ☐ OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**158514/2021   LOPEZ, WANDA vs. UBER TECHNOLOGIES, INC. ET AL**
**Motion No.  001**

**Page 9 of 9**

9 of 9