Deitrich v Binghamton Rd. Elec., LLC (2026 NY Slip Op 00557)

Deitrich v Binghamton Rd. Elec., LLC

2026 NY Slip Op 00557

Decided on February 5, 2026

Appellate Division, Third Department

Powers, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 5, 2026

CV-24-1902

[*1]Anthony P. Deitrich, Respondent,
vBinghamton Road Electric, LLC, et al., Defendants, and Amish Country Sheds of VT, LLC, Appellant. (And a Third-Party Action.)

Calendar Date:November 12, 2025

Before: Pritzker, J.P., Fisher, McShan, Powers and Mackey, JJ.

McCabe, Collins, McGeough, Fowler, Levine & Nogan, LLP, Jericho (Marc Kaim of counsel), for appellant.
Frost & Kavanaugh, PC, Troy (Arthur R. Frost of counsel), for respondent.

Powers, J.
Appeal from an order of the Supreme Court (Richard McNally Jr., J.), entered October 28, 2024 in Rensselaer County, which denied a motion by defendant Amish Country Sheds of VT, LLC for summary judgment dismissing the complaint against it.
Defendant Amish Country Sheds of VT, LLC (hereinafter ACS) is a dealer of prefabricated sheds. In September 2021, a customer in Vermont purchased from ACS a shed measuring 14 feet wide by 20 feet long. Due to the size of this shed, the shipment required a specialized oversized load permit acquired from the New York State Department of Transportation. As a result, ACS contracted with defendant St Mary & Sons Transport LLC (hereinafter St Mary) for the shipment of the shed from the place of construction to the purchaser's home. Defendant Kenneth R. Rousell II was employed at the time as a driver for St Mary and was tasked with this delivery. On October 14, 2021, while following the predetermined route set by the permit, Rousell came upon the intersection of US Route 11 and Raymond Street in the Village of Malone, Franklin County, where there was ongoing highway construction. Plaintiff, a construction worker on the site, was struck by the side of the shed as Rousell traversed through the construction site. Plaintiff was severely injured as a result and commenced this action against various defendants including, among others, ACS, St Mary and Rousell.
Pertinent to this appeal, plaintiff alleged that ACS was strictly liable for the actions of St Mary and Rousell based upon the doctrine of respondeat superior and/or agency liability, as well as that ACS was itself negligent in the way the shed had been loaded onto the trailer. ACS moved for summary judgment on the issue of liability relevant to the claims against it. ACS asserted that it owed no duty to plaintiff as it took no part in the loading or transport of the shed and was not liable for the actions of St Mary — and, thereby, Rousell — as St Mary was an independent contractor. Plaintiff opposed the motion arguing that ACS was vicariously liable for the actions of St Mary given the inherently dangerous nature of transporting an oversized load but did not contest the classification of St Mary as an independent contractor of ACS. Supreme Court denied the motion, finding that there was a triable issue of fact as to whether St Mary had negligently transported the shed, and that, relevant to ACS, the transport of an oversized load was an inherently dangerous activity for which ACS could not delegate liability. ACS appeals.
"The doctrine of vicarious liability, which imputes liability to a defendant for another person's fault, rests in part on the theory that — because of an opportunity for control of the wrongdoer, or simply as a matter of public policy loss distribution — certain relationships may give rise to a duty of care, the breach of which can indeed be viewed as the defendant's own fault" (Feliberty v Damon, 72 NY2d 112, 117-118 [1988] [citation omitted]). It [*2]is undisputed that St Mary was an independent contractor of ACS and, as a general rule, "a party who retains an independent contractor, as distinguished from a mere employee or servant, is not liable for the independent contractor's negligent acts" (Brothers v New York State Elec. & Gas Corp., 11 NY3d 251, 257 [2008] [internal quotation marks and citation omitted]). Certain exceptions exist to this general rule, however. These exceptions include, as is relevant here, " 'where the employer . . . has assigned work to an independent contractor which the employer knows or has reason to know involves special dangers inherent in the work or dangers which should have been anticipated by the employer' " (id. at 258, quoting Rosenberg v Equitable Life Assur. Socy. of U.S., 79 NY2d 663, 668 [1992]; see Mery v Eginger, 149 AD3d 827, 828 [2d Dept 2017], affd 31 NY3d 1068 [2018]; Rackowski v Realty USA, 82 AD3d 1475, 1476-1477 [3d Dept 2011]; Baraban v Orient-Express Hotels, 292 AD2d 203, 204 [1st Dept 2002]). Therefore, the question before this Court is whether ACS made a prima facie showing that the work performed was not inherently dangerous such that it does not fall within this recognized exception — and, if ACS did make such a showing, whether plaintiff raised a material issue of fact in opposition.
As explained by the Court of Appeals, "[t]he nature of those acts qualifying as 'inherently dangerous' has been stated in a number of ways, not always with perfect consistency" (Rosenberg v Equitable Life Assur. Socy. of U.S., 79 NY2d at 669). Quoting the Restatement (Second) of Torts, that Court indicated that, " '[o]ne who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he [or she] contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger' " (id., quoting Restatement [Second] of Torts § 427). This rule has since been stated somewhat differently: "[a]n actor who hires an independent contractor to do work that the actor knows or should know involves an abnormally dangerous activity is subject to vicarious liability for physical harm when the abnormally dangerous activity is a factual cause of any such harm within the scope of liability" (Restatement [Third] of Torts § 58). Thereunder, "[a]n activity is abnormally dangerous if: (1) the activity creates a foreseeable and highly significant risk of physical harm even when reasonable care is exercised by all actors; and (2) the activity is not one of common usage" (Restatement [Third] of Torts § 58, Comment b).
"Whether the work is inherently dangerous is normally a question of fact to be determined by the jury" (Rosenberg v Equitable Life Assur. Socy. of U.S., 79 NY2d at 670 [citations omitted]; but see Davies v Contel of N.Y., 187 [*3]AD2d 898, 899 [3d Dept 1992]).[FN1] However, no view of the facts presented on this motion supports the conclusion that the trucking of the oversized load in question was an inherently dangerous activity because there was not a significant risk of harm if reasonable care were exercised by those involved — namely, Rousell. Plaintiff alleges that his injuries resulted from Rousell failing to take notice of his surroundings on one side of the vehicle and crossing the line separating lanes of travel. This ordinary incident of negligence — i.e., failing to appropriately observe one's surroundings — is not inherent in the trucking of oversized loads and could have been avoided with the exercise of reasonable care. "Demanding though it may be, the activity of transporting [oversized loads on public highways] — successfully accomplished countless times daily — does not involve that sort of inherent risk for the nonnegligent driver and is simply not an inherently dangerous activity so as to trigger vicarious liability" (Chainani v Board of Educ. of City of N.Y., 87 NY2d 370, 381 [1995]; see Carlineo v Akins, 71 AD3d 1535, 1536 [4th Dept 2010] [transportation of gravel]; Chiles v D & J Serv., Inc., 34 AD3d 319, 320 [1st Dept 2006] [transportation of elderly persons]; Brown v Transcare N.Y., Inc., 27 AD3d 350, 351 [1st Dept 2006] [ambulance services]).[FN2]
As ACS had no reason to anticipate that special dangers would arise from the transportation of the shed by a nonnegligent contractor, a nondelegable duty did not arise and ACS may not be held vicariously liable for the purported negligence of St Mary as an independent contractor. This is not negated by the fact that the transport of oversized loads requires a specialized permit and is regulated by the Department of Transportation or that certain regulations or conditions of the permit may not have been complied with by St Mary. Rather, the regulations work to establish a baseline standard of care and put the onus of compliance on the operator (see Vehicle and Traffic Law § 385; 17 NYCRR part 154; see also Chainani v Board of Educ. of City of N.Y., 87 NY2d at 379, 381). Similarly, because any activity presents a risk of harm if not done properly, it is of no moment that Rousell agreed during his deposition that transporting an oversized load is a dangerous activity if not done properly.
The dissent places great reliance on the "circumstances surrounding the activity." While this is important, that cannot be to the circumvention of the circumstances surrounding the accident itself and the specific claim of negligence actually raised in this action. Plaintiff's bill of particulars alleges that Rousell, among other things, failed to "look in the direction the vehicle operated was proceeding," "maintain a proper lookout under circumstances then and there prevailing" or "to operate his vehicle as nearly as practicable entirely within a single lane and not moving from such lane until [he] first ascertained that such [*4]movement can be made with safety." This was then further described in opposition to the instant motion as alleging that Rousell "operated the truck in such a way as to cause the trailer to swerve into [a] closed traffic lane." In essence, these allegations claim that Rousell was negligent because he failed to observe his surroundings and crossed into the neighboring lane of traffic where plaintiff was working. Thus, the claim here draws striking similarities to the illustration highlighted in Rosenberg v Equitable Life Assur. Socy. of U.S. (79 NY2d at 669). Therein, where the trucking of goods is considered, "[i]f the trucker drives at excessive speed, he [or she] presents a danger to others, but the danger is not one that is inherent in the nature of the contract work and there is no vicarious liability on the part of the employer for the trucker's negligence" (id.). Relevant to the facts presented here, if any driver — even of the smallest sedan — fails to pay attention to their surroundings and crosses over into a neighboring lane of traffic, he or she presents a danger to others. Thus, the claim of negligence raised herein was not unique to the work being performed.
The dissent also highlights statements made on behalf of ACS which suggest that the representative thereof was unaware of whether St Mary was "safe." Although these statements could potentially be indicative of an independent cause of action against ACS based in negligent hiring of the independent contractor (see generally Moulton-Barrett v Ascension Health-IS, Inc., 222 AD3d 1064, 1067 [3d Dept 2023]; Dojce v 1302 Realty Co., LLC, 199 AD3d 647, 650 [2d Dept 2021]), this testimony is not, as the dissent seems to allude, a basis to circumvent the general rule that an employer will not be held liable for the negligence of an independent contractor. Nevertheless, at no point has a claim of negligent hiring been raised. Finally, while indicating that it was a specialized trailer, the dissent claims that the trailer utilized was "inadequate" because, in the dissent's view, "the subject structure was . . . too wide for [the trailer]." This assertion is contradicted by the record. The record demonstrates that the trailer was custom manufactured for the shipment of sheds and, specifically, meant to meet the "width of the skids on the sheds" to ease loading and unloading. In addition, Rousell testified that he towed the trailer in question in excess of 100 times, was familiar with its operation and did not note any issue. Thus, the dissent's seemingly factual determination that the trailer was inadequate is unsupported by the record. Regardless of the fact that the dissent's conclusion also implies that any trailer which is not as wide as the load that is to be transported is "inadequate," it is irrelevant to the specific claim of negligence raised in this action, as there is no claim that the trailer itself was insufficient for its intended purpose. Rather, plaintiff claims that there was [*5]a failure to comply with certain regulatory requirements related to use of cautionary flags.
Accordingly, the proof submitted by ACS made a prima facie showing that the trucking of the load in question was not inherently dangerous, and plaintiff's proof in opposition did not raise a material issue of fact. Supreme Court, therefore, erred in denying summary judgment in favor of ACS on the issue of liability.
Pritzker, J.P., McShan and Mackey, JJ., concur.
Fisher, J. (dissenting).
New York law creates the possibility where washing a rubber mat on a sidewalk may be inherently dangerous, but transporting gravel in a dump truck on hilly and unpaved roads may not be, because the focus is on the circumstances surrounding the activity — not the objects involved (see Wright v Tudor City Twelfth Unit, 276 NY 303, 306-307 [1938]; Carlineo v Akins, 71 AD3d 1535, 1536 [4th Dept 2010]). Even when examining the dangers inherent to near-identical activities, the outcome remains dependent on the context and attendant facts available to a reviewing court (see Kopinska v Metal Bright Maintenance Co., 309 AD2d 633, 633-634 [1st Dept 2003] [washing the building exterior along a sidewalk with bleach may be inherently dangerous; record insufficient to show otherwise]; Rodriguez v Lex Assoc., 235 AD2d 354, 354 [1st Dept 1997] [washing a sidewalk along building to sweep debris away was not inherently dangerous]). Due to these variables, the determination "[w]hether the work is inherently dangerous is normally a question of fact to be determined by the jury" (Rosenberg v Equitable Life Assur. Socy. of U.S., 79 NY2d 663, 670 [1992]). With these principles in mind, when further viewing the evidence in a light most favorable to the nonmoving party and affording the nonmovant the benefit of every favorable inference, I cannot join the majority to reverse Supreme Court on this record. I respectfully dissent.
Plaintiff was injured when he was struck by a prefabricated "shed" that was overhanging a specialized trailer being towed by a pickup truck operated by an employee of defendant St Mary & Sons Transport LLC (hereinafter St Mary). The incident occurred at an intersection within a construction zone managed by another defendant, who had a flag person regulating traffic. The structure being transported by St Mary was a 14-foot-wide by 20-foot-long building that was considered a "garage" by the seller, defendant Amish Country Sheds of VT, LLC (hereinafter ACS). As the retailer of sheds and garages, when ACS receives an order from a customer it forwards the specifications to a fabricator in the hamlet of Nicholville, located in the town of Lawrence, St. Lawrence County. Where, like here, a customer's order was larger than eight feet by six feet, ACS arranged for a transport company like St Mary to pick up the garage from the fabricator and deliver it to the customer. In doing so, no one from ACS would be present to assist or observe the loading or securing of the garage for [*6]transport. As relevant here, the garage was being transported approximately 73 miles and required an oversized load permit, which further necessitated the use of certain safety equipment (i.e., flags on staffs) and an escort vehicle. With the exception of an invoice, there was no formal contract between ACS and St Mary, and the only disclaimer of liability by ACS is that it was not responsible to the customer for lawn damage during deliveries.
In moving for summary judgment, ACS contended that it could not be vicariously liable for any negligence on the part of an independent contractor, St Mary, because transporting an oversized load like the subject "shed" is not an inherently dangerous activity. ACS supported this contention with case law involving various and related trucking activities that were determined to not be inherently dangerous activities; the majority cites to some of these cases and relies on similar cases, comparing the object being transported with the subject garage (see majority op, at 4 n 2). One of these cases is Ek v Herrington (939 F2d 839 [9th Cir 1991]), which held that the hauling of logs was not inherently dangerous (id. at 844). Although I agree with the majority that this was the Ninth Circuit's ultimate conclusion, such determination was premised on the lack of factual support in the record as it related to a pertinent comment in the Restatement (Second) of Torts § 416. This section is under the chapter involving liability of an employer of an independent contractor, and governs work dangerous in absence of special precautions, providing that " 'if a contractor is employed to transport the employer's goods by truck over the public highway, the employer is not liable for the contractor's failure to inspect the brakes on his [or her] truck, or for his [or her] driving in excess of the speed limit, because the risk is in no way a peculiar one, and only an ordinary precaution is called for. But if the contractor is employed to transport giant logs weighing several tons over the highway, the employer will be subject to liability for the contractor's failure to take special precautions to anchor them on his [or her] trucks'" (Ek v Herrington (939 F2d at 843 [emphasis added], quoting Restatement [Second] of Torts § 416, Comment d).
Unlike Ek, where the Ninth Circuit found "no evidence" that the loading of the truck was "inadequate or that it contributed to the accident" (id. at 843-844), the record here demonstrates that the garage was loaded onto a trailer that was narrower than, and did not have the proper staffs for the flags at the corners of, the structure — including where plaintiff was struck in the head by the overhanging edge.[FN3] Such incident occurred while under the overwatch of a flag person, deployed to prevent harm to roadworkers like plaintiff.Representatives from ACS and St Mary both testified that no one from ACS assisted with the loading or ensured that the garage was properly put onto the trailer or marked [*7]with flags. Indeed, the owner of ACS testified that he "would think" the driver from St Mary would be responsible for putting the flags on the garage and did not know if it was done here. He further testified that he "really [didn't] know" if St Mary was safe, and instead believed "[t]hey were supposed to be." Although representatives from St Mary testified that they used a pickup truck with a trailer specialized for "sheds," the subject structure was still too wide for it; there was no evidence in the record whether this constituted proper loading — an allegation made in plaintiff's bill of particulars which was not addressed in the moving papers, making it unclear how ACS could satisfy its moving burden.[FN4] This is particularly concerning in light of the video footage from the police officer's body cam, which depicted the pickup truck and trailer dwarfed by the large structure. Nonetheless, such allegations and attendant facts are not related to the negligent operation of the truck, but pertain to the loading of the garage on an inadequate yet specialized shed trailer, therefore serving to undercut the rationale in Ek and fitting within the last clause of comment d in the Restatement (see McCartney v Zurcher, 2025 Neb Ct App LEXIS 595, *54-55, 2025 WL 3074095, *15 [Neb Ct App Nov. 4, 2025]; Williams v Tennessee Riv. Pulp & Paper Co., 442 So 2d 20, 23 [Ala Sup Ct 1983]).
But even beyond the point noted in the Restatement, Ek, McCartney and Williams, upon the right record before a court, even the hauling of logs could constitute an inherently dangerous activity (see Doak v Green, 677 So 2d 301, 302-303 [Fla Dist Ct App, 1st Dist 1996]). Indeed, just as the act of using a hose to wash a sidewalk, rubber mat or building could be, or not be, an inherently dangerous activity, the determination remains heavily fact-dependent (see Wright v Tudor City Twelfth Unit, 276 NY at 307).This is why such evaluation follows a "flexible formula recogniz[ing] that the privilege to farm out work has its limits and that those limits are best defined by reference to the gravity of the public policies that are implicated" (Kleeman v Rheingold, 81 NY2d 270, 275 [1993] [internal quotation marks, brackets and citation omitted]).
By no means does this imply that plaintiff will prevail at trial against ACS, nor should my position be interpreted as suggesting that trucking is an inherently dangerous activity. But to the contrary, that, in certain circumstances, trucking could be inherently dangerous where, like here, a specialized trailer was not enough to safely move through an intersection overseen by a flag person. Further, ACS's policy of "always" hiring others to transport buildings larger than eight feet by six feet — and the subject garage was more than double that — rather than deal with the special permits and commercial driver's license, falls squarely within the limits of farming out work cautioned by the Court of Appeals. Even if not definitively so, when according [*8]deference to these principles of flexibility and recognizing that this is normally the type of determination made by a trier of fact, specifically when viewed in a light most favorable to the nonmovant with the benefit of each favorable inference, I would affirm Supreme Court's denial of summary judgment and allow the claims interposed against ACS to proceed to trial.
ORDERED that the order is reversed, on the law, without costs, defendant Amish Country Sheds of VT, LLC's motion for summary judgment granted, and complaint against it dismissed.

Footnotes

Footnote 1: The dissent emphasizes that the issue of whether the work is inherently dangerous is normally a question of fact to be left for the factfinder (see Rosenberg v Equitable Life Assur. Socy. of U.S., 79 NY2d at 670). We acknowledge and agree with that point. However, summary judgment is appropriate where, as here, there is no reasonable view of the evidence from which a jury could conclude to the contrary (see generally Montano v City of Watervliet, 47 AD3d 1106, 1109 [3d Dept 2008]).

Footnote 2: Some cases from outside New York are instructive to the facts presented here (compare Meek v Ward, 2021 US Dist LEXIS 182104, *8, 2021 WL 4319585, *3 [D Or 2021] [transportation of farm machinery on public roadways found not to be inherently dangerous], and Ek v Herrington, 939 F2d 839, 844 [9th Cir 1991] [hauling of logs found not to be inherently dangerous], and McCartney v Zurcher, 2025 Neb App LEXIS 595, *54-55, 2025 WL 3074095, *15 [Neb Ct App 2025] [transportation of an overloaded tractor trailer found not to be inherently dangerous], with American Home Assur. Co. v National R.R. Passenger Corp., 908 So 2d 459, 468 [Fl 2005] [transportation of an 82-ton combustion turbine found to be inherently dangerous]).

Footnote 3: A representative from St Mary testified that the flags were clip-ons and were not on staffs (see 17 NYCRR 154-1.8 [a] [requiring "flags of at least 18 inches square, on staffs, located at the extremities of the vehicle/load" and providing a diagram of the correct placement depicting four flags on staffs from the corners of an overhanging load]).

Footnote 4: Specifically, the unrebutted allegation is that ACS was liable for "negligently loading the shed on the trailer pulled by [d]efendant Rousell."